STATE of Minnesota, Respondent,

v.

Inocente LOPEZ–SOLIS, Appellant.

No. C3–97–681.

Supreme Court of Minnesota.

Feb. 4, 1999.

John M. Stuart, State Public Defender, Sharon E. Jacks, Asst. State Public Defender, Minneapolis, for Appellant.

Michael A. Hatch, Attorney General, Alison E. Colton, Asst. Attorney General, St. Paul, Jeffrey Thompson, Rice County Attorney, Faribault, for respondent.

## OPINION

LANCASTER, J.

This appeal presents the issues of whether a trial court must make a finding regarding a criminal defendant's ability to pay before imposing prosecution costs under Minn.Stat. § 631.48 (1996), and what specific costs are recoverable pursuant to the statute. Following his conviction for second-degree intentional murder, appellant, Inocente Lopez–Solis, appealed his conviction and the trial court's award of $14,538.10 in prosecution costs, arguing that various costs awarded to the state are not recoverable. The court of appeals affirmed Lopez–Solis' conviction and the imposition of prosecution costs. We granted review on the issue, of prosecution costs. We affirm in part, reverse in part, and remand.

A jury found Lopez–Solis guilty of the July 27, 1995, shooting of Francisco Fernando Victorino Garcia in Northfield, Minnesota. The verdict came after Lopez–Solis' second trial. Lopez–Solis' first trial ended in a mistrial and the second trial was moved, on defense motion, from Rice County to Dakota County. Lopez–Solis was sentenced to an executed prison term of 348 months (29 years).

In addition to restitution to the victim's family, the trial court ordered Lopez–Solis to pay the reasonable costs of prosecution in the amount of $14,538.10. The amount of costs was derived from an affidavit submitted by the state from the manager of the Rice County attorney's office. The costs were attributable to translation of police reports and other documents, translation costs incurred during the grand jury proceedings, court reporting expenses for the grand jury, medical examiner expenses, service fees, and expenses for the assistant attorneys general who assisted Rice County with the case. Lopez–Solis did not object to the costs at sentencing except to argue that any imposition of costs was an unconstitutional penalty for going to trial, an argument he did not raise on appeal to this court.

The trial court awarded the state all of the expenses sought in the office manager's affidavit. The court of appeals affirmed in an unpublished decision. *State v. Lopez–Solis,* No. C3–97–681, 1998 WL 8453 (Minn.App. Jan.13, 1998). On appeal to this court, the state reduced its request for prosecution costs to $11,754.97, conceding that, because the first trial ended in a mistrial, the trial court should not have awarded the state certain costs arising out of that proceeding.

■■■ Review of the criminal prosecution costs statute involves a question of law subject to *de novo* review by this court. *See Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 910 (Minn.1995). If the particular costs sought are recoverable under the criminal prosecution costs statute, a trial

court's award will not be reversed absent a clear abuse of discretion. *See Striebel v. Minnesota State High Sch. League,* 321 N.W.2d 400, 403 (Minn.1982) (applying abuse of discretion standard of review in case involving the civil disbursements statute).

Costs in criminal prosecutions were unknown at common law. *See Bayard v. Klinge,* 16 Minn. 221, 232–33 (1871). As such, recovery for prosecution costs depends entirely on statutory provisions. *See, e.g., State v. Miller Home Dev., Inc.,* 243 Minn. 1, 7, 65 N.W.2d 900, 903 (1954) (noting statutory authorization of costs and disbursements required in eminent domain proceedings). Minnesota's prosecution costs statute permits the trial court to order a defendant, upon conviction, to pay the costs incurred in prosecuting a case:

**631.48 Penalty may include costs of prosecution.**

In a criminal action, upon conviction of the defendant, the court may order as part of the sentence that defendant shall pay the whole or any part of the disbursements of the prosecution, including disbursements made to extradite a defendant. The court may order this payment in addition to any other penalty authorized by law which it may impose. The payment of the disbursements of prosecution may be enforced in the same manner as the sentence, or by execution against property. When collected, the disbursements must be paid into the treasury of the county of conviction, but this payment may not interfere with the payment of officers', witnesses', or jurors' fees.

Minn.Stat. § 631.48 (1996).

■■■ The purpose of the statute is "not the punishment of the offender but the reimbursement of the state." *State v. Morehart,* 149 Minn. 432, 433, 183 N.W. 960 (1921). In *Morehart,* we limited the state's ability to recover costs to those recoverable by a prevailing party in a civil action.[1] *Id.*

---

1. The civil disbursements statute provides that "[i]n every action in a district court, the prevailing party, including any public employee who prevails in an action for wrongfully denied or withheld employment benefits or rights, shall be

allowed reasonable disbursements paid or incurred, including fees and mileage paid for service of process by the sheriff or by a private person." Minn.Stat. § 549.04 (1996).

## I. Ability to Pay

We have never reached the issue of whether a trial court must make a finding of ability to pay before imposing prosecution costs on a criminal defendant. Until recently, the court of appeals stated that trial courts must make a finding of ability to pay before imposing costs pursuant to Minn.Stat. § 631.48. *See, e.g., State v. Blair,* 474 N.W.2d 630, 638 (Minn.App.1991), *pet. for rev. denied* (Minn., Oct. 11, 1991) (remanding to trial court for determination of ability to pay prosecution costs); *State v. Niemczyk,* 400 N.W.2d 401, 404 (Minn.App.1987) (admonishing trial court for failing to determine defendant's ability to pay costs of prosecution); *State v. Ramstad,* 348 N.W.2d 391 (Minn.App.1984) (cautioning trial courts "to make an appropriate finding concerning appellant's ability to pay") (citing *Fuller v. Oregon,* 417 U.S. 40, 46–47, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974)).

Following our decision in *Perkins v. State,* 559 N.W.2d 678, 692–93 (Minn.1997) (holding that imposition of a fine did not require an ability to pay inquiry), the court of appeals changed course in a series of unpublished decisions. In *State v. Hollis,* the court of appeals remanded the case to the trial court for detailed findings regarding prosecution costs, but stated that the failure to make findings regarding a defendant's ability to pay does not constitute reversible error. No. C6–96–2382, 1997 WL 471386 (Minn.App. Aug.19, 1997), *pet. for rev. denied* (Minn., Oct. 21, 1997), at *2. Next, in *State v. Morris,* the court of appeals held that the prosecution costs statute contains no language requiring an inquiry into a defendant's ability to pay. No. C7–96–2553, 1997 WL 559739 (Minn.App. Sept.9, 1997), at *1. Finally, the court of appeals panel in this case stated that based on the reasoning in *Perkins,* trial courts no longer need to inquire into a defendant's ability to pay before imposing prosecution costs. *Lopez–Solis,* 1998 WL 8453, at *3.

Lopez–Solis argues that the rationale applied in *Perkins* should not be extended to the prosecution costs statute. He contends that because the purpose of the prosecution costs statute is not punishment but rather reimbursement, it should only be applied after a finding of ability to pay is made.[2] Looking to the plain language of the prosecution costs statute, we note that the legislature has imposed no requirement that a defendant's ability to pay be assessed by the trial court before imposing costs. Here, as in *Perkins,* we are limited by the legislature's words. When the legislature intends to require inquiry into a criminal defendant's ability to pay, it has made that plain. *See, e.g.,* Minn.Stat. § 611A.045, subd. 1(2) (1996) (requiring inquiry into defendant's "income, resources, and obligations" before restitution may be imposed). We will not read a requirement of ability to pay into the criminal prosecution costs statute. We therefore hold that the trial court need not find an ability to pay before imposing prosecution costs in a criminal proceeding.

## II. Costs Permitted Under Prosecution Costs Statute

■ Having decided that the trial court did not err by imposing costs without finding an ability to pay, we now turn to the question of whether the specific costs claimed by the state are recoverable under section 631.48.[3] The costs allowed must either be expressly provided for in the statute or analogous to costs taxable to the prevailing party in a civil action. *See Morehart,* 149 Minn. at 433, 183

---

2. Lopez–Solis relies upon *Fuller v. Oregon,* 417 U.S. 40, 53, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), to support his contention that a finding of ability to pay is necessary before imposing prosecution costs on a criminal defendant. At oral argument, counsel for Lopez–Solis conceded that under *Fuller* a determination of ability to pay could take place *either* at a defendant's sentencing or at some future date prior to any action taken to enforce the assessment.

3. Lopez–Solis argues that the trial court erred because it did not make findings regarding the reasonableness of the costs sought by the state.

Lopez–Solis did not object to the specific requests at trial, and we will not reverse a trial court's determination absent an abuse of discretion. *See Striebel,* 321 N.W.2d at 403. Because Lopez–Solis failed to object at sentencing, he waived any right to object on appeal as to whether the costs were reasonable. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996) (stating that issues not raised in the trial court will generally not be considered on appeal). Furthermore, the trial judge was in a position to determine reasonableness after presiding over two trials and thus did not abuse his discretion in awarding costs.

N.W. at 960. As we examine the specific costs claimed in this case, we expressly limit our holding to what costs may be imposed against a defendant in a criminal action.

### A. Extradition Costs

The prosecution costs statute expressly allows for the recovery of extradition costs. Therefore, the trial court's award of $1,654 in extradition costs is affirmed.

### B. Translator and Interpreter Costs

■ The state sought reimbursement for translation of autopsy reports, assistance of a translator during its presentation of evidence to the grand jury, translation of witness statements, and for the use of an interpreter to assist the prosecution during trial. The state did not seek reimbursement for the costs of the interpreters assigned to assist Lopez–Solis at trial. The court of appeals affirmed the trial court's award of translator costs, comparing them to discovery costs. *Lopez–Solis,* 1998 WL 8453, at *3. We disagree and hold that translator and interpreter costs are not recoverable under the prosecution costs statute.

The language of the statute does not contain a provision allowing for the recovery of interpreter costs. *See* Minn.Stat. § 631.48. While it is true that in civil cases some costs incurred in discovery may be awarded, the use of interpreters and translators is fundamental to a criminal defendant's fair treatment and is not analogous to discovery. The legislature requires that interpreters be appointed for criminal defendants handicapped in communication at arrest and through all subsequent proceedings, including grand jury proceedings. *See* Minn.Stat. §§ 611.30–.34 (1996). The purpose of this legislation is to ensure that all criminal defendants who are handicapped in communication are "treated as fairly as [those] who speak[ ] English fluently." *State v. Mitjans,* 408 N.W.2d 824, 829 (Minn.1987). Therefore, the trial court's award of $1,100 for translator and interpreter costs is reversed.

### C. Grand Jury Costs

Lopez–Solis was originally charged by complaint with second-degree intentional murder and second-degree felony murder. The original charges were dismissed and the grand jury's substituted indictment included a count of first-degree intentional murder. The jury acquitted Lopez–Solis on the first-degree intentional murder charge, the only charge the state was required to present to the grand jury. *See* Minn. R.Crim. P. 17.01.

The trial court awarded the state the costs of having a court reporter attend and transcribe the grand jury proceeding, produce transcripts after the proceeding, and for the presentation of photographic evidence to the grand jury. In addition, the trial court awarded costs for witness travel in connection with grand jury testimony and reimbursement for travel expenses incurred by the assistant attorneys general who helped Rice County present the case to the grand jury. The state argues that grand jury proceedings are analogous to discovery in a civil case and thus are recoverable under the criminal prosecution costs statute.

The procedures that govern grand jury proceedings are enumerated in our rules of criminal procedure. *See* Minn. R.Crim. P. 18.01–.09. We have explained the extraordinary nature of these proceedings:

> The grand jury system is deeply embedded in the criminal law in this state. The Bill of Rights in the United States Constitution and the laws of Minnesota contain provisions requiring grand jury indictments in the more serious cases. A grand jury proceeding has long been held to be basic to the rights of an accused.

*State v. Thompson,* 273 Minn. 1, 14, 139 N.W.2d 490, 501 (1966).

■ The only person authorized to convene a grand jury inquiry is the county attorney. *See* Minn. R.Crim. P. 18.01. Only the attorneys for the state, the grand jury members, court reporters, and qualified interpreters for witnesses handicapped in communication are permitted to attend grand jury proceedings. *See* Minn. R.Crim. P. 18.04. In limited circumstances, police officers and attorneys for a witness may be permitted to attend. *See id.* The deliberations and votes of grand jurors are secret

and may not be disclosed. *See* Minn. R.Crim. P. 18.08.

■ At first glance, grand jury proceedings may be seen as analogous to discovery in a civil case. In both settings, facts are uncovered which may be used at trial. The grand jury system is, however, a creature of the criminal justice system. *See Thompson,* 273 Minn. at 14, 139 N.W.2d at 501. No mechanism with such broad power is available to litigants in a civil case. Moreover, grand jury proceedings are not enumerated as a recoverable cost in the prosecution costs statute. *See* Minn.Stat. § 631.48. Because grand jury costs are not enumerated in the prosecution costs statute and because the proceedings do not have an analog in the civil setting, the trial court's award of $2,144.27 for grand jury costs is reversed.

### D. Expert Witness Fees and Costs

Lopez–Solis challenges the assessment of fees paid to Dr. Susan Roe, the medical examiner, and Joe Castorena, a toxicologist. Lopez–Solis concedes that fees incurred for expert testimony are recoverable. *See* Minn. Stat. § 357.25 (1996) (providing that trial judge has discretion to award expert witness fees); Minn. Gen. R. Prac. 127 (providing that court administrators may tax $300 per day for expert witness fees subject to increase or decrease by a judge); *see also Klinzing v. Gutterman,* 250 Minn. 534, 538, 85 N.W.2d 665, 668 (1957) (holding that expert witness fees are recoverable against defeated party in civil case); *Kundiger v. Metropolitan Life Ins. Co.,* 218 Minn. 273, 286, 15 N.W.2d 487, 495 (1944) (allowing expert witness fees in civil case).

### 1. Medical Examiner Fees

The record before us indicates that Rice County does not employ a medical examiner. Instead, Rice County used the services of Dr. Roe, an assistant medical examiner for Ramsey County, who conducted an autopsy. Dr. Roe also testified at each of Lopez–Solis' trials, testifying that in her opinion the victim's cause of death was a homicide. The trial court granted the state's request for reimbursement for Dr. Roe's expert witness fees.

■ Lopez–Solis argues that the costs of a medical examiner conducting an autopsy, preparing an autopsy report, and testifying at trial are costs that should not be imposed against a criminal defendant following conviction. Lopez–Solis contends that because the legislature requires county sheriffs to report all violent deaths to the medical examiner and because it is within the medical examiner's discretion whether to conduct an autopsy, the medical examiner should be viewed as an independent party. *See* Minn.Stat. § 390.32 (1996). We agree with Lopez–Solis that expenses incurred by medical examiners in conducting an autopsy, preparing an autopsy report, and testifying at trial may not be imposed against a criminal defendant following conviction. These services are provided independent of a criminal prosecution and therefore are not recoverable. Therefore, the $1,200 awarded by the trial court for Dr. Roe's trial testimony is reversed.[4]

### 2. Expert Travel Fees

■ While Lopez–Solis does not take issue with the costs imposed for the testimony of toxicologist Castorena, he challenges the award of costs for Castorena's travel from Texas. Lopez–Solis argues that travel expenses incurred as part of an expert's preparation and testimony are limited by Minn. Stat. § 357.22 (1996), which provides:

> The fees to be paid to witnesses shall be as follows * * * (2)[f]or travel to and from the place of attendance, to be estimated from the witness's residence, if within the state, or from the boundary line of the state where the witness crossed it, if without the state, 28 cents per mile.

*Id.* However, the same section further states that "[n]o person is obliged to attend as a witness in any civil case unless one day's attendance and travel fees are paid or tendered the witness in advance." *Id.* Lopez–Solis' argument that section 357.22 limits ex-

---

4. The state admits that it was awarded an additional $1,200 in fees charged by the medical examiner for her testimony in the first trial. The state concedes that such fees are not recoverable because the first trial ended in a mistrial.

pert travel costs to mileage within the state is misplaced.

■ An award of expert witness fees is discretionary with the trial court and will be reversed only where there is an abuse of discretion. *See Carpenter v. Mattison,* 300 Minn. 273, 280, 219 N.W.2d 625, 631 (1974). Section 357.25 is the controlling statute regarding the award of costs and fees associated with an expert's preparation for and testimony at trial, and the legislature afforded trial courts discretion in determining what fees are "just and reasonable." Minn.Stat. § 357.25. The trial court was within its discretion in awarding travel costs of $1,168.60 for the toxicologist's travel.[5]

E. Witness Travel Fees

■ The trial court imposed costs for transporting witnesses to the second trial.[6] Lopez–Solis contends that the language of section 357.22 limits the award of travel fees to mileage incurred within the state.

In the context of a civil case, we have held that "[t]his statute clearly does not authorize the payment of travel expense to a nonresident witness for travel outside the state of Minnesota." *In re Miller's Estate,* 242 Minn. 29, 32, 64 N.W.2d 1, 3 (1954). While the legislature has afforded trial courts discretion in awarding expert witness fees and costs, no such provision exists for lay witnesses. Furthermore, the prosecution costs statute is silent regarding witness travel fees. We will not read such language into the statute. Therefore, the trial court's award of $1,289.30 is reversed.

F. Exhibit Costs

■ Lopez–Solis claims the trial court's award of costs for exhibits, including photographs, slides, and blood testing, was in error. However, Minn.Stat. § 357.315 (1996) authorizes the imposition of such costs. That statute provides that "the cost of obtaining medical records used to prepare a claim, whether or not offered at trial, and the reasonable costs of exhibits shall be allowed in the taxation of costs." *Id.* The legislature has specifically noted that these costs may be included in a taxation of costs. The imposition of $123.70 attributable to exhibit costs is affirmed.

G. Subpoena Costs

■ The trial court awarded $300 for the cost of subpoenas and service of process incurred in the trials of Lopez–Solis.[7] Lopez–Solis maintains that the legislature prohibited any such award when it enacted Minn.Stat. § 357.24 (1996), which provides:

When a defendant is represented by a public defender or an attorney performing public defense work * * * neither the defendant nor the public defender shall be charged for any subpoena fees or for service of subpoenas by a public official.

We read this provision to preclude the state from charging a defendant or the attorney representing the defendant for service of process or subpoenas incurred while defending criminal charges. Here, the state did not seek costs for subpoenas or service of process fees incurred by Lopez–Solis in putting on his defense. Instead, the state seeks reimbursement for expenses incurred by the prosecution. The civil disbursements statute expressly provides that "fees and mileage paid for service of process by the sheriff or by a private person" are recoverable. Minn. Stat. § 549.04. The trial court's imposition of $125 in costs is therefore affirmed.

H. Costs of Assistant Attorneys General and County Attorney

■ The trial court imposed costs associated with the travel of the assistant attorneys

---

5. Again, the state concedes that it cannot seek fees incurred for the first trial. Thus, the trial court's award of travel expenses incurred by Castorena in connection with the first trial is not recoverable.

6. The trial court also awarded costs for the transportation of witnesses to the grand jury proceeding, which are not recoverable. In addition, the trial court awarded costs for transportation of witnesses to the first trial. Because the first trial ended in a mistrial, these costs are not recoverable. *See* Minn.Stat. § 631.48.

7. The state concedes on appeal that $175 of the fees imposed is associated with the first trial and should not have been awarded.

general, the county attorney who prosecuted the case, and the office manager of the Rice County attorney's office. Lopez–Solis claims that these costs are not recoverable under the prosecution costs statute.

The court of appeals relied upon its decision in *State v. Niemczyk* as authority for allowing recovery of the travel costs incurred by the prosecuting attorneys. *Lopez–Solis,* 1998 WL 8453, at *3 (citing *Niemczyk,* 400 N.W.2d 401, 404 (Minn.App.1987)). *Niemczyk,* however, did not deal with the travel costs of prosecuting attorneys. Instead, *Niemczyk* listed various fees recoverable in a civil action, including witness travel costs expressly provided for·in section 357.22. 400 N.W.2d at 404. As we have discussed above, section 357.22 applies only to witness travel fees; thus the court of appeals erred when it applied the holding of *Niemczyk* to allow the recovery of travel costs for the prosecuting attorneys in this case.

Therefore, and because travel costs for prosecuting attorneys are not expressly provided for in the prosecution costs statute, we reverse the trial court's imposition of $1,163.95 in travel costs.

### III. Summary

The trial court imposed $14,538.10 in prosecution costs on Lopez–Solis. On appeal, the state conceded some claimed items and sought $11,754.97. Based upon our ruling today, we conclude that $3,071.30 in costs may be imposed on Lopez–Solis. We remand this matter to the district court for entry of judgment consistent with this opinion.

Affirmed in part, reversed in part, and remanded.