**STATE of Minnesota, Respondent,**

v.

**Robert Allen SMITH, petitioner, Appellant.**

**No. CX–97–256.**

Supreme Court of Minnesota.

Aug. 6, 1998.

John M. Stuart, State Public Defender, Bradford S. Delapena, Assistant State Public Defender, Minneapolis, for Appellant.

Hubert H. Humphrey III, Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, Charles E. MacLean, Winona County Attorney, Winona, for Respondent.

OPINION

BLATZ, Chief Justice.

Robert Allen Smith appeals from his conviction on one count of controlled substance crime in the first degree. While deliberating, Smith's jury asked the trial court for a

transcript of the testimony of a paid informant, Mark Lee, who testified against Smith. The trial court denied this request. The Minnesota Court of Appeals affirmed on the ground that Smith waived the issue by failing to object and even so, that the trial court acted within its discretion by refusing the jury's request. *See State v. Smith*, No. CX–97–256, 1997 WL 757384, at *1 (Minn.App. Dec. 9, 1997) (unpublished opinion). We affirm.

In January 1994, Mark Lee contacted an investigator for the Winona Police Department, Allan Mueller, and offered to work as an informant in drug stings. Because Lee had worked as an informant for Mueller in the past, Mueller readily asked Lee to arrange a transaction with an out-of-town dealer, appellant Robert Smith. On January 24, 1994, Lee paged a number assigned to Smith. Using a cassette tape provided by Mueller, Lee subsequently recorded several telephone conversations in which Lee and two other persons—one of whom Lee identified as Smith—discussed a potential purchase of one-quarter ounce of cocaine. Just after midnight on January 25th, Smith allegedly gave Lee a quantity of cocaine in exchange for $430, which Mueller previously had given to Lee. Mueller sat nearby in a parked car, recording the conversation via a body transmitter worn by Lee. Lee delivered the cocaine to Mueller shortly thereafter. Subsequent analysis showed that the powder, which contained cocaine, weighed 10.2 grams, well over one-quarter ounce.[1]

During that first transaction, Lee inquired about getting an additional one-half ounce of cocaine. Lee and Smith had several more telephone conversations—which Lee again taped—before another transaction was arranged. On February 3rd, Smith told Lee that he would bring one-half ounce of cocaine to Winona. Smith was to arrive at 9 p.m.; however, he was delayed. Mueller told Lee that if Smith arrived that night, Lee should delay the transaction until the morning, at which time Mueller would give him the buy money and a body transmitter. In fact,

Smith and another man did arrive after midnight, and Lee booked them into a room at the motel he managed. Shortly after arriving, Smith gave Lee the one-half ounce of cocaine, even though Lee told Smith that he would not be able to pay for it until the following morning. Lee hid the cocaine in the motel office. On the morning of February 4th, Mueller met Lee and gave him $800 and the body transmitter. Lee gave Mueller 12.2 grams of a powder containing cocaine. Lee then went to the motel room, gave Smith the money, and engaged Smith and the other man in conversation about the drug transaction. Mueller, who was stationed nearby, watched as Smith and the other man exited the motel room and drove away in a car. Police stopped the car in Red Wing and arrested its occupants. Smith was carrying $800, and the serial numbers of the bills matched those provided by Mueller to Lee for the cocaine buy.

Smith was charged with and tried on two counts of first-degree controlled substance crime. *See* Minn.Stat. § 152.021, subd. 1(1) (1996).[2] At trial, Smith argued that Lee had "cut" the cocaine with an unidentified substance to make the powder weigh more and, thus, to induce the police to pay him more for his assistance. In contrast, the state's key witness, Lee, testified that he had no knowledge of any such tampering.

During its deliberations, the jury sent a note to the trial court requesting a "[t]ranscript [of] Lee's testimony." The trial court denied the request, stating:

> I begin, as I must, by reminding you that you must consider all instructions as a whole, and whenever given, you must consider them altogether [sic] and not unfairly single out one or a few instructions without regard to the rest.
>
> Having said that, my response to your question will be[,] I'm sure[,] unsatisfactory to wherever it was generated, but there are no transcripts that are prepared during the course of the trial or made avail-

---

1. Mueller testified that one-quarter ounce is equivalent to seven grams.

2. "A person is guilty of controlled substance crime in the first degree if * * * on one or more

occasions within a 90–day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing cocaine." Minn.Stat. § 152.021, subd. 1(1) (1996) (amended 1997).

able to juries during deliberation. You'll have to rely upon your individual and collective recollection of the evidence to guide you in your deliberations.

See Minn. R.Crim. P. 26.03, subd. 19(2) (establishing procedures for addressing jury requests to review testimony). Smith's attorney did not object on the record to the trial court's denial. The jury subsequently acquitted Smith with respect to the January 24–25 transaction but convicted him on the count representing the February 3–4 transaction.

Appealing to the court of appeals, Smith asserted that the trial court abused its discretion in denying the jury's request for the transcript of Lee's testimony. See Smith, 1997 WL 757384, at *1. The court of appeals held that Smith had waived the issue by failing to object at trial and, even so, that the trial court did not abuse its discretion. See id. at *1–2. We granted Smith's petition for further review.

■■■ A defendant's failure to object to the trial court's response to a jury request ordinarily operates as a waiver of his or her right to raise the issue on appeal. See, e.g., State v. McMorris, 373 N.W.2d 593, 595 (Minn.1985); State v. Harris, 333 N.W.2d 873, 876 (Minn.1983); State v. Gunderson, 296 N.W.2d 884, 885 (Minn.1980); State v. Severson, 289 N.W.2d 496, 496–97 (Minn. 1980). Smith concedes that he failed to object to the trial court's ruling. Nonetheless, "this court will consider plain error affecting substantial rights if the error had the effect of denying the defendant a fair trial. The test for determining plain error is whether there was * * * a reasonable likelihood that any error substantially affected the verdict." Van Buren v. State, 556 N.W.2d 548, 551 (Minn.1996) (citations and internal quotation omitted); see also Minn. R.Crim. P. 31.02.

■■ Smith contends that the trial court's ruling constitutes plain error, in view of the importance of Lee's testimony to the state's case against him. Smith relies upon the fact that the county attorney charged Smith, dropped the charges when Lee was unavailable to testify because it would be unable to prove guilt beyond a reasonable doubt without Lee's testimony, and brought the charges anew when Lee again became available to

testify. Smith asserts that had the jury heard Lee's testimony again, it might have rejected Lee's version of the facts, accepted Smith's argument that Lee had cut the cocaine, and acquitted Smith on the count relating to the second transaction.

Smith likens his case to State v. Spaulding. In Spaulding, this court held that the trial court abused its discretion by instructing the jury before deliberations that no testimony would be read back to them and by flatly rejecting its request to have the defendant's testimony read, although the jury described itself as "deadlocked." 296 N.W.2d 870, 877–78 (Minn.1980). The jury had to sift through conflicting evidence regarding "whether the defendant * * * continued his aggression beyond the limits of self-defense or his possession of the pistol beyond justifiable possession." Id. at 876. We reasoned:

> Defendant's testimony covered 35 pages out of approximately 393 pages of testimony. The trial court did not attempt to narrow the jury's request to specific parts of the testimony. He categorically refused to honor any requests for rereading evidence. In fact, the court refused to exercise its discretion at all by determining at the outset of deliberations, and before any requests from the jury, that no testimony would be reread. Under the circumstances of this case, the trial court abused its discretion to the defendant's prejudice. The effect of the court's inaction was to force the jury to decide the case on the basis of [a] sketchy memory of the evidence. The error was especially prejudicial since the requested testimony was the testimony of the defendant, the witness who most clearly presented evidence supporting the claim of self-defense. Defendant's testimony went to the core of the case, and it is clear from the record that the jury needed assistance. Under these circumstances, even though the defendant failed to object at trial, the trial court committed prejudicial error by refusing the jury's request in such a close case.

Id. at 878.

Spaulding is distinguishable from the case before us. Lee testified that he did not

tamper with the cocaine, and there was no testimony to the contrary. Thus, this was not a "close" case in which the requested testimony supported the defendant's theory of the case; rather, the jury had to find Lee's testimony incredible in order to find Smith not guilty. The jury heard Lee's testimony firsthand, they had the opportunity to observe his demeanor, and they heard Smith, through his attorney, propound his theory of the case. Moreover, unlike the *Spaulding* jury, Smith's jury gave no indication that it was deadlocked. Given the fact that it returned a verdict just 13 minutes after the request was denied, the jury plainly resolved any lingering concerns about Lee's credibility quickly. In view of these facts, we do not consider it "reasonabl[y] likel[y]" that the trial court's decision substantially affected the jury's perception of Lee's credibility or, in turn, its verdict.[3] There is no plain error. Accordingly, we affirm the decision of the court of appeals.

3. While we conclude that the denial of the jury's request for a rereading was not plain error, we note with some concern that the basis for the trial court's denial of the jury's request does not appear on the record and that the trial court made no attempt to encourage the jury to formulate a more narrow request.