In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4309

United States of America,

Plaintiff-Appellee,

v.

Thomas C. Richardson,

Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No 99 CR 339--Suzanne B. Conlon, Judge.

Argued October 23, 2000--Decided January 25, 2001


 Before Posner, Diane P. Wood, and Williams, Circuit
Judges.

 Posner, Circuit Judge.  The defendant pleaded
guilty to receiving and possessing child
pornography (including visual depictions) in
violation of 18 U.S.C. sec.sec. 2252(a)(2) and
(a)(4)(B) and was sentenced to 108 months in
prison. He had downloaded more than 70,000
pornographic images from Internet-accessed
newsgroups with such names as
"alt.binaries.pictures.erotica.lolita." The FBI
examined a random sample of 1,300 of these images
and discovered that 77 depicted bondage and
torture of children. The sentencing judge raised
Richardson's base offense level by four levels
under U.S.S.G. sec. 2G2.2(b)(3) because the
bondage and torture pictures "portray[ed]
sadistic or masochistic conduct or other
depictions of violence" and by two levels under
U.S.S.G. sec. 2G2.2(b)(5) because "a computer was
used for the transmission" of the illegal
material. The appeal challenges the two
punishment enhancements.

 An initial puzzle unilluminated by the briefs is
the confusing overlap between the guideline under
which Richardson was sentenced, 2G2.2, and a
closely related guideline, 2G2.4. The first of
these is captioned "Trafficking in Material
Involving the Sexual Exploitation of a Minor;
Receiving, Transporting, Shipping, or Advertising
Material Involving [such exploitation];
Possessing Material Involving [such exploitation]
with Intent to Traffic." The second guideline is

captioned "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." The first guideline specifies a base offense level of 17, the second one of 15. The second also provides a two-level enhancement for use of a computer, but expresses it differently: "if the defendant's possession of the material resulted from the defendant's use of a computer, increase by 2 levels," rather than "if a computer was used for the transmission" of the material. The second guideline, however, contains no enhancement for sadistic, masochistic, or violent material. The first guideline, we are told in the Sentencing Commission's commentary on it, is applicable to defendants convicted of (among other offenses) receiving visual images of child pornography, 18 U.S.C. sec. 2252(a)(2), a statute that carries a maximum penalty of 15 years in prison, see sec. 2252(b)(1), while the second guideline is applicable to defendants convicted of possession of such images, sec. 2252(a)(4), which carries a maximum penalty of only 5 years. sec. 2252(b)(2). Richardson was convicted under both statutes but sentenced under the guideline applicable to the one carrying the heavier maximum penalty. That was proper under the guidelines' grouping rules, U.S.S.G. sec.sec. 3D1.1, 3D1.3(a), and anyway is not challenged; if he were punished only for his less grave offense, he would be escaping punishment for committing the graver one.

 The puzzle is why receiving, which under the first guideline and the statute that it implements is punished as severely as sending, United States v. Ellison, 113 F.3d 77, 81 (7th Cir. 1997), should be punished more severely than possessing, since possessors, unless they fabricate their own pornography, are also receivers. The explanation may be that receivers increase the market for child pornography and hence the demand for children to pose as models for pornographic photographs; possessors, at least qua possessors, as distinct from receivers, though most of them are that too, do not. United States v. Johnson, 221 F.3d 83, 98 (2d Cir. 2000). The possessor who creates his own pornography strictly for his personal use is not part of the interstate and international traffic in child pornography, a traffic that not only increases the demand for the production of such pornography but, by virtue of its far-flung scope, makes it extremely difficult to locate, let alone protect, the children exploited by it. Concern with the welfare of the children who are used to create pornography is part of the public concern over child pornography, United States v. Saylor, 959 F.2d 198, 200 (11th Cir. 1992), and this makes the receiver a greater malefactor than the possessor.

We grant that the distinction is rather tenuous. The possessor who creates his own child pornography has presumably used a child as his model; and it is uncertain whether Richardson paid for any of the images he downloaded. But these are doubts for another day, since he makes no issue of the fact that the two statutes, and the guidelines implementing them, specify different penalties.

Against the four-level enhancement for receiving visual images of bondage or torture, however, Richardson argues with support from several decisions by other circuits that the enhancement requires proof that he received these images deliberately. United States v. Tucker, 136 F.3d 763 (11th Cir. 1998) (per curiam); United States v. Kimbrough, 69 F.3d 723, 734 (5th Cir. 1995); United States v. Cole, 61 F.3d 24 (11th Cir. 1995) (per curiam); United States v. Saylor, supra, 959 F.2d at 200-01. There is no evidence that Richardson ordered such images or wanted to receive them. He downloaded child pornography from newsgroups that did not indicate whether any of their images contained scenes of bondage or torture. If the sample that the government examined is representative, about 5 percent of the images he received did contain such scenes.

One of the decisions on which Richardson relies (Saylor) is distinguishable as involving "sentencing entrapment." Id. at 200. With no reason to think Saylor desired sadomasochistic pornography, the government shipped it to him in order to create a predicate for enhanced punishment. Cole is distinguishable from our case for a different reason, that the defendant exercised reasonable care to avoid receiving sadomasochistic pornography. Richardson did not. On the contrary, by downloading in bulk from sources that did not indicate the range of sexual practices depicted in their inventory of pornographic images, he assumed a substantial risk of receiving some bondage and torture images. Tucker and Kimbrough do not require proof of reasonable care to avoid the receipt of violent images, but in Kimbrough a requirement of intent is assumed rather than discussed, and in Tucker the court, while explicit that intent to receive violent images must be shown, found the requisite intent on evidence no stronger than is present in this case.

Setting aside cases of sentencing entrapment, we think that the government is correct that liability for receiving violent child pornography is strict. Sentencing enhancements generally are imposed on the basis of strict liability rather than of the defendant's intentions or even his lack of care. The more serious of the two

offenses of which Richardson was convicted requires knowing receipt of child pornography, thus satisfying the usual requirement that mens rea be proved to convict a person of a serious offense, and exposed him to a maximum sentence of 15 years. The guideline at issue enhanced his sentence within that range to reflect the fact that receiving bondage and torture pictures aggravates the offense. The guidelines contain numerous provisions enhancing punishment when the defendant causes more than the usual harm that the offense inflicts, without regard to whether unusual harm was intended. An example is U.S.S.G. sec. 2B3.1, which, as explained in United States v. Hart, 226 F.3d 602, 605 (7th Cir. 2000), "governs the crime of robbery and provides for a range of enhancements to be imposed by the sentencing court if the defendant's conduct during the course of the robbery created a risk of harm beyond that which is inherent to the offense"; see also United States v. Schnell, 982 F.2d 216, 220-22 (7th Cir. 1992). The punishment bonus for receiving child pornography that depicts bondage and torture is simply another illustration of the general principle. Should a case arise in which the defendant made heroic efforts to avoid receiving bondage and torture pictures, the district court will no doubt grant a downward departure, and that is safety valve enough. This is not such a case, and we therefore find ourselves in respectful disagreement with our sister circuits. Because of this disagreement we have circulated the opinion to the full court in accordance with 7th Cir. R. 40(e). No judge in regular active service voted to hear the case en banc.

 Regarding the second issue, the two-level enhancement for transmission via computer, there is an initial question whether the issue is properly before us. At sentencing the judge asked Richardson's lawyer whether he had an objection to the enhancement, and the lawyer said "no." This was a waiver in the strict sense of the term, that is, a deliberate relinquishment of a known right. As such it is barred from receiving further judicial consideration, United States v. Olano, 507 U.S. 725, 733 (1993); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); United States v. Harris, 230 F.3d 1054, 1058-59 (7th Cir. 2000); United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000); United States v. Goldberg, 67 F.3d 1092, 1099-1100 (3d Cir. 1995), unless the lawyer violated his duty of providing his client with effective assistance of counsel, which is not argued here. "Waiver" is often used, it is true, in a broader sense to mean that a litigant forfeits an issue by failing to present it in a timely fashion (or at all), even though the failure may have been accidental rather than deliberate. United States v. Johnson, 223 F.3d

665, 668 (7th Cir. 2000); United States v. Staples, supra, 202 F.3d at 995; Delwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1127 (7th Cir. 1997). In cases of waiver in this sense, better called forfeiture to distinguish it from classic or "real" waiver, Rule 52(b) of the Federal Rules of Criminal Procedure permits "plain errors" to be "noticed although they were not brought to the attention of the court."

The distinction between waiver and forfeiture is important to the operation of an adversary system, which is another reason for avoiding use of the word "waiver" to designate both concepts. It is one thing to require judges to be alert to oversights that may affect substantial rights, and another to require them to override the clearly expressed wish of a party or his lawyer, which may be backed by excellent strategic reasons, not to invoke a particular right. The law has not taken the second step. The safety valve here is the defendant's right under the Sixth Amendment to the effective assistance of counsel, which may make a waiver for which there was no strategic reason a ground for giving the defendant a new trial.

Even if there were no difference between waiver and forfeiture, this would not matter in the present case, because we believe that "computer . . . used for the transmission" in section 2G2.2(b)(5) of the sentencing guidelines does not mean, as the defendant argues, "computer . . . used by the defendant for the transmission." It is true that this language differs from that of the corresponding computer-related enhancement in the possession guideline, which directs enhancement "if the defendant's possession of the material resulted from the defendant's use of a computer." But that language wouldn't fit all the different offenses in the trafficking-receiving-possessing-with-intent-to-distribute guideline. Some difference in language between the two computer-enhancement provisions was therefore inevitable. The "used for the transmission" formulation is not as perspicuous as it could be, and this is a matter to which the Sentencing Commission may wish to advert (and maybe at the same time it could explain why receiving and possessing the identical materials should be punished differently); but we think it reasonably clear that it covers receiving as well as sending. The words permit this reading, though they do not compel it, but the structure of the guideline compels it. The guideline treats transporting and receiving identically (unless the defendant is right and the computer enhancement drives a wedge between the two offenses). A defendant who receives in the mails a magazine containing child pornography is

punished the same (apart from individual differentiating characteristics such as criminal history) as the one who sent it. What sense would it make to break this punishment identity just because the mode of transmission was the Internet rather than the mails? Use of the Internet enhances the dangers that child pornography poses, because it is a more discreet and efficient method of distribution; but if this makes the sender more dangerous, it likewise makes the receiver more dangerous. A market has two sides, supply and demand; without both, the market collapses. The senders of child pornography supply it; the demanders receive it. The guideline is acknowledged to treat both sides of the market symmetrically when any method of transmission other than the Internet is used; it would make no sense to treat them differently when the more ominous method is used.

Affirmed.