STATE of Minnesota, Appellant,

v.

Anthony OSBORNE, Sr., Respondent.

No. C1–03–253.

Supreme Court of Minnesota.

June 8, 2006.

Benjamin J. Butler, Assistant State Public Defender, Office of the Minnesota State Public Defender, Minneapolis, MN, for Respondent.

Mike Hatch, State Attorney General, Saint Paul, MN, Raymond F. Schmitz—Olmsted County Attorney, James P. Spencer—Senior Assistant Olmsted Attorney, Rochester, MN, for Appellants.

## OPINION

HANSON, Justice.

An Olmsted County jury found respondent Anthony Osborne, Sr., guilty of 28 counts of drug-related offenses. The district court entered judgment of conviction on 23 counts and sentenced Osborne on 21 of those counts, resulting in an aggregate 268–month sentence that included three upward departures. Osborne appealed his conviction and sentence. The Minnesota Court of Appeals affirmed Osborne's conviction and sentence, and we denied review. After the United States Supreme Court issued its decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), we granted Osborne's motion to reopen the direct appeal of his sentence for review of an alleged *Blakely* error and remanded the case to the court of appeals. The court of appeals reversed Osborne's sentence on the basis of *Blakely* and remanded to the district court. The state appeals that reversal, arguing that Osborne forfeited his *Blakely* claim for purposes of appeal by failing to raise the claim in the district court. We affirm the court of appeals.

Based on a series of controlled drug buys conducted by the Rochester Police Department, Osborne was charged in October 2001 with 28 counts of drug-related offenses. The charges included racketeering, conspiracy to commit controlled substance crime in the first degree, controlled substance crime in the third degree, and two counts of solicitation of a juvenile.[1] The charges resulted from a three-year police investigation of a drug-trafficking organization that imported drugs from Chicago for sale in Rochester. Osborne was alleged to have controlled this drug-trafficking organization, while his sons and others assisted with sales in the Rochester area. The jury found Osborne guilty on all 28 counts.

At his sentencing hearing, Osborne argued against upward departures from the sentencing guidelines, asserting that any upward departure would exaggerate the criminality of his offenses. The district court imposed a governing sentence of 225 months for count 3—importing controlled substances across state borders. That sentence reflected an upward durational departure of 67 months from the presumptive sentence of 158 months. Nineteen sentences were made to run concurrently with the governing sentence. The court also imposed upward durational departures for count 2—first degree conspiracy to commit a controlled substance crime, and count 27—the first conviction of solicitation of a juvenile. Because these latter two sentences ran concurrently with the sentence for count 3, they did not increase the length of Osborne's actual sentence. Finally, the court imposed a 43-month consecutive sentence for count 28—the second conviction of solicitation of a juve-

nile. This 43-month consecutive sentence was not an upward departure.[2]

At Osborne's sentencing hearing, the district court stated that the court's Minnesota Sentencing Guidelines Commission (MSGC) report "will specify the additional grounds and elaborate on those grounds, including the * * * level of sophistication apparent here with respect to this particular defendant in the organization and in his conduct" including the degree of sophistication, large number of transactions involving cocaine and heroin, and the number of people involved. The court also stated that the sentences imposed were more "appropriate, reasonable and equitable than the presumptive sentence" because

> in the aggregate the defendant was a prime mover in a major controlled substance offense * * * involving trafficking under circumstances much more onerous in the aggregate than the usual offense and well beyond what is necessary to meet the elements of any of the crimes of conviction in this case, exceeding the prerequisites of the label "major controlled substance offense."

Without any upward departures, Osborne's total sentence would have been 201 months, but because the court departed upward, Osborne's total sentence was 268 months.

The district court's MSGC report identified the specific factors on which the upward departures were based. For the 67-month upward departure on count 3, the aggravating factors identified in the report were that (1) Osborne "committed crime as part [of] a group of three or more persons who all actively participated in the crime,"

---

1. The solicitation charges stemmed from Osborne involving his then-minor sons in his alleged drug sales.

2. Minnesota Statutes § 609.494, subd. 4 (2004), provides that a consecutive sentence for solicitation of a juvenile is not an upward departure.

and (2) the crime was a "major controlled substance crime" involving "high position in drug distribution hierarchy," "high degree sophistication/lengthy period of time," and "use of position/status."

The district court identified two aggravating factors for its upward departure on count 2:(1) Osborne "committed crime as part [of] a group of three or more persons who all actively participated in the crime," and (2) the crime was a "major controlled substance crime" involving "3 or more separate transactions," "sale quantities substantially larger than personal use," "high position in drug distribution hierarchy," and "high degree sophistication/lengthy period of time."

Finally, the district court identified four aggravating factors for its upward departure on count 27:(1) the juvenile "victim was particularly vulnerable—codefendant son," (2) Osborne "committed crime as part [of] a group of three or more persons who all actively participated in the crime," (3) the crime was a "major controlled substance crime" involving "3 or more separate transactions," "involved manufacture for use by others," "high position in drug distribution hierarchy," "high degree sophistication/lengthy period of time," and "use of position/status," and (4) "position of authority, superiority, confidence or trust—father/son."

Osborne appealed his sentence to the court of appeals, arguing that the district court abused its discretion because the aggravating factors "duplicated considerations incorporated in statutes relating to drug crimes and presumptive sentences." *State v. Osborne*, No. C1–03–253, 2004 WL 333469, at *6 (Minn.App. Feb. 24, 2004). The court of appeals rejected Osborne's argument and affirmed the district court. *Id.* at *8. The court of appeals essentially held that because the district court found that the factors enumerated in Minnesota Sentencing Guidelines II.D.2.b(5) were met, substantial and compelling circumstances were present and the district court did not abuse its discretion in imposing upward departures. *Id.* The court of appeals did not directly address Osborne's argument that the factors relied upon for the departures duplicated other sentencing considerations.

■ Osborne then filed a petition for review, which we denied. During the time within which Osborne could petition the United States Supreme Court for certiorari, *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), was decided. The rule established by *Blakely* is that, other than a prior conviction, any fact that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted to by the defendant or proved to a jury beyond a reasonable doubt. *United States v. Booker,* 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *State v. Houston,* 702 N.W.2d 268, 271 (Minn.2005). Osborne moved to reopen his direct appeal for review of an alleged *Blakely* violation.

We granted Osborne's motion, vacated our earlier order denying review, vacated the court of appeals' decision with respect to sentencing, and remanded to the court of appeals for reconsideration in light of *Blakely.* The court of appeals determined that Osborne's sentence violated *Blakely* because the aggravating factors relied upon for the upward departures were not found beyond a reasonable doubt by the jury. *State v. Osborne,* No. C1–03–253, 2005 WL 65517, at *4 (Minn.App. Jan. 11, 2005). The court then reversed Osborne's sentence and remanded to the district court. *Id.* The state appealed the reversal of Osborne's sentence and we granted review. On appeal, the state argues that the court should review this case under the

plain error standard because Osborne forfeited consideration on appeal of any *Blakely* violations by failing to preserve the error at sentencing. Alternatively, the state argues that the jury verdicts on other counts encompassed the findings necessary to support the upward departures on counts 2, 3, and 27, and therefore there was no *Blakely* error.

## I.

 We have previously concluded that *Blakely* announced a new rule of constitutional criminal procedure. *Houston,* 702 N.W.2d at 273. New rules of constitutional criminal procedure apply retroactively to cases pending on direct review at the time the new rule is announced. *O'Meara v. State,* 679 N.W.2d 334, 339 (Minn.2004). A case is pending on direct review until the time period for filing a certiorari petition with the United States Supreme Court has expired. *Id.* A petition for certiorari to the Supreme Court is due within 90 days of entry of judgment. Sup.Ct. R. 13(1). We denied Osborne's petition for review of his sentence on May 18, 2004. Because Osborne had 90 days, or until August 16, to file a petition for certiorari with the Supreme Court, and the Court decided *Blakely* on June 24, Osborne's direct appeal was still pending when *Blakely* was decided. Therefore, we hold that *Blakely* applies retroactively to Osborne's case.

## II.

 The state argues that even if *Blakely* applies to Osborne's case, consideration of any alleged *Blakely* violation has

been forfeited for purposes of appeal by Osborne's failure to object to the error at the district court. In two recent cases, we addressed alleged *Blakely* errors in the interests of justice without addressing the issue of forfeiture. *State v. Henderson,* 706 N.W.2d 758, 760 (Minn.2005); *State v. Allen,* 706 N.W.2d 40, 44 (Minn.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1884, —— L.Ed.2d —— (2006).

 As a general rule, district court errors—even those affecting constitutional rights—can be forfeited for purposes of appeal by the failure to make a timely objection in the district court. *See, e.g., State v. Jones,* 678 N.W.2d 1, 22 (Minn. 2004) (prosecutorial misconduct); *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002) (erroneous jury instructions); *State v. Vick,* 632 N.W.2d 676, 684 (Minn.2001) (evidentiary errors); *State v. Smith,* 582 N.W.2d 894, 896 (Minn.1998) (responding to jury questions). Certain sentencing errors are also forfeited for appeal by failure to object in the district court. *State v. Lopez-Solis,* 589 N.W.2d 290, 293 n. 3 (Minn.1999) (holding that the district court's failure to make findings regarding the reasonableness of prosecution costs was forfeited for appeal absent an objection at sentencing); *Blondheim v. State,* 573 N.W.2d 368, 368 (Minn.1998) (holding that the district court's imposition of a fine not discussed in a plea agreement was forfeited for appeal absent an objection at sentencing).[3]

But we conclude that Osborne did not forfeit consideration of his *Blakely* claim on appeal by failing to raise it in the

**3.** We note that the statutory protection against multiple sentencing under Minn.Stat. § 609.035 (2004) is *not* forfeited by failing to raise the issue in the district court. *State v. White,* 300 Minn. 99, 105–106, 219 N.W.2d 89, 93 (1974); *see also Ture v. State,* 353 N.W.2d 518, 523 (Minn.1984); *State v. Men-*doza, 297 N.W.2d 286, 288 (Minn.1980). We have, however, construed this nonforfeitable protection very narrowly to apply only to multiple sentencing, and not to the protection against serial prosecution also provided by Minn.Stat. § 609.035. *Mendoza,* 297 N.W.2d at 288.

district court. *Blakely* had not been decided at the time that Osborne was before the district court for sentencing. And our case law had consistently rejected any *Blakely*-type claim, holding that an upward departure from a presumptive sentence does not present any Sixth Amendment issues under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), so long as the sentence does not exceed the maximum sentence authorized by the legislature in the statute.[4] Thus, one implication of the state's argument for forfeiture would be that the risk of failing to raise a new principle of law, then unknown to the parties and contrary to the well-established precedent of this court, is on the defendant. Another implication would be that we would expect defendants to continue, formalistically, to make motions or objections based on arguments that we have repeatedly rejected as being without legal merit. A third implication is that a defendant's silence at sentencing may be taken as a forfeiture of his *Blakely* right to a jury trial on sentencing issues even if the defendant was not advised that he had a right to a jury trial on those issues and did not waive that right affirmatively.

The first implication raises issues of fundamental fairness. We cannot expect a defendant to foresee a new rule of law when we have consistently rejected that rule. The second raises issues of judicial economy. We do not expect parties to continue to make objections that we have definitively rejected. The third, and most important, runs directly contrary to our well-settled rules on what process is necessary to achieve an effective waiver of the right to a jury trial. This is where any analysis must begin.

## A.

When it comes to the waiver of at least two fundamental rights, the right to a jury trial and the right to counsel, our law is clear that these rights cannot be waived by silence. For the right to a jury trial, we need go no further than Minn. R.Crim. P. 26.01, subd. 1(2)(a):

> The defendant, with the approval of the court may waive jury trial provided the defendant does so personally in writing or orally upon the record in open court * * *.

And, even when such a waiver is made in writing or on the record, it is not valid unless it is made "after being advised by the court of the right to trial by jury and after having had an opportunity to consult with counsel." *Id.* In fact, we have said that the advisory by the court must be accompanied by "searching questions" to be satisfied that "the defendant was informed of his rights and that the waiver was voluntary." *State v. Ross*, 472 N.W.2d 651, 653 (Minn.1991) (quoting *State v. Piet-*

---

4. As we noted in *State v. Houston*, 702 N.W.2d at 271, "[p]rior to *Blakely*, 'statutory maximum' was generally thought to mean the heaviest penalty a court could impose on a defendant—the ceiling of the relevant statutory sentencing range." *See also, e.g., State v. Grossman*, 636 N.W.2d 545, 549 (Minn.2001) (construing the term "statutory maximum" from *Apprendi* to be the maximum sentence authorized by the legislature); *State v. Smith*, 669 N.W.2d 19, 33 (Minn.2003) (holding that *Apprendi* was not implicated where only the minimum term of imprisonment was affected by a finding by the court without a jury, so long as the sentence was within the statutory maximum), *overruled by State v. Leake*, 699 N.W.2d 312, 323 (Minn.2005). The court of appeals, likewise, had rejected the argument that a departure from the presumptive sentence violated *Apprendi* where the sentence was within the statutory maximum. *State v. McCoy*, 631 N.W.2d 446, 451 (Minn.App. 2001) (holding that the "statutory maximum" prescribed in *Apprendi* looked to the statute, not to the sentencing guidelines).

*raszewski,* 283 N.W.2d 887, 890 (Minn. 1979)).

At Osborne's sentencing hearing, the district court, naturally unsuspecting of the future *Blakely* decision and properly relying on our own case law to the contrary, did not advise Osborne of his right to have a jury trial on sentencing factors, give Osborne an opportunity to consult with counsel on such a right, or ask any searching questions. The district court made no inquiry of Osborne about whether he wished to waive the right to a jury trial on sentencing factors and did not obtain such a waiver in writing or orally on the record. We do not fault the district court for this procedure, which was prescribed by our own decisions, but the necessary consequence is that any "waiver" by Osborne, by his silence or his failure to object to the court acting as fact-finder on sentencing factors, was ineffective.

Moreover, it cannot be argued that Osborne agreed to sentencing departures or waived the need to determine the facts necessary to support such departures. To the contrary, Osborne submitted a sentencing memorandum that opposed the state's request for an upward departure and challenged the weight of the evidence to support the departure factors, stating:

> The facts in this case are neither substantial nor compelling in any manner that distinguishes this case from a typical racketeering case. The defendant respectfully submits to this court that there is no basis for an upward departure.

The district court proceeded to grant departures in sentencing by deciding some facts that were not based on the verdicts of the jury, but instead required a qualitative assessment of the evidence. This was a violation of Osborne's Sixth Amendment right, as now recognized in *Blakely,* and because that right is retroactively available to Osborne, it was also a violation of Minn. R.Crim. P. 26.01, subd. 1(2)(a), and our jurisprudence under that rule.

The state attempts to sidestep our jurisprudence on jury trial waiver by characterizing the issue as being one of "forfeiture." But forfeiture is nothing more than one form of waiver, that is, waiver by silence. And, as the cases relied upon by the state make clear, we have never applied forfeiture or waiver by silence to situations where the constitution or our court rules require an affirmative waiver, i.e., one that is expressly made and supported by a demonstration that it is knowing, voluntary, and intelligent.[5] For that reason, we have never applied forfeiture or waiver by silence to the right to counsel or the right to a jury trial. This is so because, by definition, forfeiture and the requirement of an affirmative waiver cannot coexist. They are antithetical.

Viewed in another context, we would not conclude that a defendant had forfeited his right to counsel by appearing at a plea hearing or trial without counsel and failing to request counsel. To the contrary, we would conclude, as we have on many occasions, that the failure of the court to fully advise the defendant of his right to counsel and to secure, by intense inquiry, the defendant's express waiver, demonstrated to be knowing, voluntary, and intelligent, means that the defendant's waiver of his

---

**5.** The state cites cases where forfeiture or waiver by silence has been applied to claims of prosecutorial misconduct, erroneous jury instructions, evidentiary errors and responses to jury questions. None of these presents a situation where the legal basis for any objection has already been foreclosed by our well-settled law, or the waiver is subject to any affirmative requirement that it be express or be demonstrated to be knowing, voluntary, and intelligent.

right to counsel was ineffective. *State v. Nordstrom*, 331 N.W.2d 901, 904 (Minn. 1983); *State v. Casarez*, 295 Minn. 534, 536, 203 N.W.2d 406, 408 (1973); *State v. Moosbrugger*, 263 Minn. 56, 61–62, 116 N.W.2d 68, 72 (1962). We require, under Minn. R.Crim. P. 5.02(1) and (4), that the court "advise the defendant of the right to request counsel at any stage of the proceeding" and, if the charge is a felony and the defendant wishes to waive counsel, that the court "shall ensure that a voluntary and intelligent written waiver of the right to counsel is entered in the record" and that, prior to accepting the waiver, the court "shall advise the defendant" of all "facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel."

The requirements of Rule 5.02 for waiver of the right to counsel parallel the requirements of Rule 26.01 for waiver of the right to a jury trial. These requirements are studied and deliberate, having their foundation in the constitution.

### B.

Moreover, at the time of Osborne's sentencing hearing, our case law foreclosed any objection Osborne may have made to the district court's ability to determine aggravating factors without a jury.[6] No purpose would be served by a forfeiture rule that requires a defendant to make constitutional objections that have already been rejected by our prior decisions.

This point is especially pertinent to the concurrence's attempt to distinguish forfeiture from waiver. The rationale offered by the concurrence in support of the forfeiture doctrine is that the failure to object may be based on a defense strategy to not invoke a particular right. That rationale has some application to the cases where we have applied forfeiture—the failure to object to prosecutorial misconduct, a proposed jury instruction, proffered evidence, or a proposed response to a jury question. But this rationale has no application here. The question of whether a jury trial is required for sentencing factors does not arise in the midst of trial and is not commingled with the many variables of trial strategy. And, on this record, we can safely conclude that Osborne's failure to request a jury trial was not for reasons of trial strategy, but was based on our case law that foreclosed such a request.

It, of course, is true that a defendant may, in some instances, waive the right to a jury trial for strategic reasons. But, in such cases, we do not engage in speculation about whether the defendant's silence may reflect such a strategy—we require that the waiver be affirmatively made, after a full advisory and a searching inquiry to be certain that it is knowing, intelligent, and voluntary.

In this connection, the concurrence relies on *Martinez v. Court of Appeal of California*, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), to suggest that a defendant whose constitutional rights have clearly been violated at trial might not have a right to seek relief from that violation on appeal. But *Martinez* is irrelevant to any issue in this case. It does not deal with either the right to a jury trial or the doctrine of forfeiture. Instead, it deals with whether a defendant has a Sixth Amendment right to self-representation on direct appeal from his conviction. *Id.* at

---

**6.** Although the district court departed upward by 67 months to sentence Osborne on count 3 to 225 months (18.75 years) in prison, the departure would not have necessitated a jury trial under our pre-*Blakely* case law because the maximum sentence permitted by Minn. Stat. § 152.0261, subd. 3 (2000), was 35 years.

155, 120 S.Ct. 684. *Martinez* might offer some guidance by analogy if it focused on a violation of a Sixth Amendment right at trial, but it focuses instead only on whether the Sixth Amendment right to counsel or self-representation at trial carries over to create a right to counsel or self-representation on appeal. Osborne is seeking to vindicate his right to a jury trial at the trial of sentencing factors. The Sixth Amendment applies to that trial, as we were plainly told in *Blakely*.

### C.

Finally, our decisions on the retroactivity of *Blakely's* predecessor, *Apprendi*, suggest that the question of whether a new rule of law should be applied on appeal turns not on forfeiture law but on retroactivity law. In *State v. Grossman*, we applied *Apprendi* to the defendant's appellate claim that his Sixth Amendment rights had been violated even though the defendant had not objected to his sentence on Sixth Amendment grounds before the district court. 636 N.W.2d at 549. We did the same in *O'Meara v. State*, 679 N.W.2d at 339–40. These cases suggest that the principles that govern our retroactivity analysis already incorporate the assumption that the defendant did not raise the precise objection at sentencing. Were it otherwise, we would not grant retroactive application to all cases pending on direct review, but only to those cases where the defendant had somehow anticipated the new rule of law and made a predictive objection. Stated another way, if the retroactivity of *Blakely* incorporates the protections of Rule 26.01, as it surely must, then the failure to follow Rule 26.01 at Osborne's sentencing hearing makes any "forfeiture" or waiver of his right to a jury trial ineffective.

We note that the Ohio Supreme Court came to the same conclusion, rejecting the plain error test for *Blakely* error, in its recent decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 483–84 (2006). The state argued for the plain error test because *Foster* did not object to his sentence on *Apprendi* grounds before the trial court. The Ohio court rejected that argument, stating:

> Foster could not have relinquished his sentencing objections as a known right when no one could have predicted that *Blakely* would extend the *Apprendi* doctrine to redefine "statutory maximum." In addition, we note that Blakely's guilty plea did not create an inference that he waived a jury's finding of the additional fact of "deliberate cruelty." * * * Furthermore, *Blakely's* Sixth Amendment holding has been applied retroactively to cases pending on direct appeal in states that have found it applicable to their statutes.

*Id.* (citations omitted).

The concurrence relies on certain federal cases that have applied a plain error analysis to cases involving the retroactive application of *Apprendi, Blakely*, or *Booker*. These cases provide no guidance here, for several reasons. First, they were decided under Fed.R.Crim.P. 52(b) and govern direct appeals from convictions in the federal system. None involved the retroactive application of *Blakely* to a state sentencing system. Second, they apply plain error as a matter of course, without any discussion or use of the forfeiture doctrine to reach that result. Third, the post-*Blakely* cases in the federal system do not involve the retroactivity of *Blakely*, but only of *Booker*.

*Booker* addressed the question of whether the principles of *Blakely* applied to the Federal Sentencing Guidelines. 543 U.S. at 245, 125 S.Ct. 738. But *Booker* was announced in two separate opinions, one which held that *Blakely* applied to the

Guidelines and the second which invalidated the provisions of the Guidelines that made them mandatory. *Id.* at 226–27, 125 S.Ct. 738. The effect of the second opinion is to make the Guidelines advisory, enabling the judge to make sentencing enhancements without the use of a jury. *United States v. Duncan,* 400 F.3d 1297, 1303 (11th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 432, 163 L.Ed.2d 329 (2005). As a result, the *Booker* error that has been reviewed in subsequent cases is not the denial of the defendant's Sixth Amendment right to a jury trial on sentencing issues, but the failure to treat the Guidelines as advisory. *Id.* Because that error does not implicate the Sixth Amendment right to a jury trial, there is no requirement for an affirmative waiver of that right and the defendant's silence (or failure to object on Sixth Amendment grounds) can legitimately be viewed as forfeiture.

These federal decisions under *Booker* are not relevant here because, in *State v. Shattuck,* we declined to return to indeterminate sentencing, holding that this would conflict with the overriding purpose of the Guidelines to "maintain uniformity, proportionality, rationality, and predictability in sentencing." 704 N.W.2d 131, 144 (Minn.2005) (quoting Minn.Stat. § 244.09, subd. 5 (2004)). Moreover, we also declined to modify the Minnesota Guidelines to make them advisory, as was done in *Booker,* because of important differences between the Minnesota and federal systems. *Id.* at 146–47.

█ Accordingly, we hold that Osborne did not forfeit consideration of *Blakely* errors for purposes of this appeal and, as a result, we review Osborne's claims under a harmless error standard.

### III.

█ The state argues that the district court did not err in imposing upward sentencing departures because the jury verdicts on other counts satisfied the requirements of *Blakely.* Without deciding the ultimate question of whether it is ever possible for a jury verdict on one crime to coincidentally satisfy the requirements of *Blakely* on another crime, we conclude that the jury verdicts here did not do so.

We have previously held that the elements of an offense cannot be used as aggravating factors to impose an upward sentencing departure for that same offense. *State v. Peterson,* 329 N.W.2d 58, 60 (Minn.1983). We have also held that conduct underlying one conviction for which a defendant was sentenced cannot be used to support an upward sentencing departure for a separate conviction. *State v. McIntosh,* 641 N.W.2d 3, 9 (Minn.2002) (citing *State v. Spaeth,* 552 N.W.2d 187, 196 (Minn.1996)). The rationale behind these rules prohibiting the use of the elements of criminal convictions to support upward sentencing departures is that a defendant should not be punished twice for the same conduct. Based on this precedent, the jury verdict on the elements of the 21 crimes for which the court entered convictions and sentences cannot be used to support the upward sentencing departures imposed by the district court on counts 2, 3, or 27.

█ In addition to the 21 offenses on which Osborne was sentenced, the jury also found Osborne guilty of two offenses for which the court entered judgment of conviction but did not impose a sentence, and five offenses for which the court did not enter judgment of conviction. Although we are unable to discern the precise basis of the court's decision on these seven counts, it appears that the court concluded that the offenses were lesser-included offenses or arose from the same behavioral incidents as the 21 offenses of

**447**

which Osborne *was* convicted and sentenced. Accordingly, we must decide if the jury verdict on the elements of lesser-included offenses or offenses arising from a single behavioral incident may be relied upon as aggravating factors to support upward sentencing departures.

Count 6 (controlled substance crime in the first degree—possession) appears to be a lesser-included offense that is necessarily proved by proof of the elements of count 3—importing controlled substances across state borders. *See* Minn.Stat. § 609.04, subd. 1(4) (2004). A defendant may not be convicted of both the charged offense and a lesser-included offense for the same criminal act. *Id.* Further, allowing convictions of both the charged offense and a lesser-included offense exaggerates the criminality of the defendant's conduct. *State v. Koonsman,* 281 N.W.2d 487, 489–90 (Minn.1979). It follows that allowing an upward departure based on a jury verdict on the elements of a lesser-included offense also exaggerates the criminality of the defendant's conduct. Accordingly, we hold that the elements of lesser-included offenses under Minn.Stat. § 609.04, subd. 1(4), cannot support upward sentencing departures.[7]

 Additionally, our review of the jury instructions reveals that the aggravating factors relied upon by the district court were not encompassed in the elements of the offenses of which Osborne was convicted or in the lesser-included offenses for which he was found guilty. With the exception of the number of drug transactions, which can be determined by the jury verdicts on specific sales, the departure factors identified by the court require a qualitative assessment of the evidence. We find nothing in the jury instructions or verdicts that can be construed as a jury determination that the three-year time period in question was a "lengthy period of time," or that Osborne occupied a "high position in drug distribution hierarchy." Accordingly, we conclude that even if reliance on a jury verdict on the elements of the foregoing crimes *was* permitted, the jury verdicts in this case did not satisfy the requirements of *Blakely.*

Finally, we need not decide whether it is ever possible for the elements of an offense arising out of the same behavioral incident to support an upward departure on another offense. We have examined the sentencing transcript and have concluded that the elements of the offenses for which the district court did not impose any sentence do not support the aggravating factors that were the basis of the upward sentencing departures.

## IV.

 Having determined that the jury verdicts did not satisfy *Blakely,* we now turn to a harmless error analysis. Under *Blakely,* the presumptive sentence in the Guidelines is the maximum allowable penalty based solely on the jury verdict. *Shattuck,* 704 N.W.2d at 135. We conclude that because the factors on which the upward departures were based were neither found by the jury nor admitted to by Osborne, Osborne's sentence was imposed in violation of *Blakely.* Because the upward departures increased the length of Osborne's governing sentence by 67 months, the *Blakely* error was necessarily prejudicial, not harmless.[8]

---

**7.** We do not render a decision on whether guilty verdicts on lesser-included offenses defined by other provisions of Minn.Stat.

§ 609.04, subd. 1, can be used to support upward departures.

**8.** Although it is unnecessary to our analysis because we have concluded that the *Blakely*

Accordingly, we affirm the court of appeals' decision and we remand to the district court for resentencing consistent with *State v. Shattuck*, 704 N.W.2d 131 (Minn. 2005).

Affirmed.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring specially).

## SPECIAL CONCURRENCE

I concur in the result reached by the majority and its analysis of the issues except for its conclusion that the forfeiture doctrine does not apply to consideration of a *Blakely* error. I conclude that, despite the fundamental importance of the *Blakely* right, consideration of a *Blakely* error can be forfeited for appeal by a defendant's failure to preserve the error at the district court. It is important to note at the outset that the forfeiture doctrine does not necessarily foreclose appellate review of a for-

feited error. We may address a forfeited error when the interests of justice require its consideration and addressing the error would not work an unfair surprise on a party.[1] *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989); *see* Minn. R.Crim. P. 28.02, subd. 11, 29.04, subd. 11. Additionally, under Minn. R.Crim. P. 31.02, we have the discretion to consider a forfeited error if it is plain error affecting substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998).

The majority acknowledges that consideration of most errors is forfeited for purposes of appeal by failing to object in the district court.[2] But when reaching its conclusion that Osborne is entitled to relief, the majority asserts that errors relating to rights that cannot be waived by silence at the district court are not forfeited for appeal by failing to object. I appreciate the majority's concern that Osborne did not affirmatively waive his right to jury trial on the sentencing factors. I also understand and appreciate the majority's concern that the forfeiture doctrine can, as it does in this case, require a party to object

error was not harmless, we acknowledge Osborne's argument that the *Blakely* error was per se prejudicial because it was a structural error. Structural errors require automatic reversal because they "call into question the very accuracy and reliability of the trial process." *McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir.1998). But because the resolution of the structural error question is unnecessary to our decision in this case, and the Supreme Court has yet to consider whether a *Blakely* error is a structural error, we decline to speculate whether the Court will conclude that a *Blakely* error is a structural error. We note that the Court has granted certiorari in a case that may answer this question. *See State v. Recuenco*, 154 Wash.2d 156, 110 P.3d 188 (2005), *cert. granted*, —— U.S. ——, 126 S.Ct. 478, 163 L.Ed.2d 362 (2005).

1. In two recent cases, we have addressed and corrected *Blakely* errors in the interests of justice. *State v. Henderson*, 706 N.W.2d 758,

760 (Minn.2005); *State v. Allen*, 706 N.W.2d 40, 44 (Minn.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1884, —— L.Ed.2d —— (2006).

2. I note that in addition to the examples identified by the majority, we have also held that a defendant forfeits consideration of a Fourth Amendment seizure issue by failing to preserve the error below. *Sorenson*, 441 N.W.2d at 458–59; *see also State v. Blom*, 682 N.W.2d 578, 614 (Minn.2004) (concluding that the defendant forfeited his claim that his statement should have been excluded because it was involuntary); *State v. Quick*, 659 N.W.2d 701, 717 (Minn.2003) (concluding that the defendant forfeited claims of ineffective assistance of counsel and prosecutorial misconduct); *State v. Litzau*, 650 N.W.2d 177, 182 (Minn.2002) (stating the general rule that when a defendant fails to object to a specific error at trial, the defendant forfeits his right to have the error reviewed on appeal).

to an error before the rule of law expressly articulating the error has been announced. Nevertheless, my analysis leads me to conclude that the district court's failure to elicit a waiver of the right to jury trial on sentencing factors does not, without more, mean that Osborne has preserved the error for purposes of appeal. Further, I note that other defendants who received upward sentencing departures before the *Blakely* rule was announced have objected on Sixth Amendment grounds and preserved a *Blakely* error for appeal. *See, e.g., Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *State v. Barker,* 705 N.W.2d 768, 773 (Minn.2005); *State v. Shattuck,* 704 N.W.2d 131, 134 (Minn.2005).

The Seventh Circuit has concluded, and I agree, that waiver and forfeiture are analytically distinct concepts. *United States v. Richardson,* 238 F.3d 837, 841 (7th Cir.2001), *cert. denied,* 532 U.S. 1057, 121 S.Ct. 2206, 149 L.Ed.2d 1035 (2001). In *Richardson,* that court said "[t]he distinction between waiver and forfeiture is important to the operation of an adversary system * * *. It is one thing to require judges to be alert to oversights that may affect substantial rights, and another to require them to override the clearly expressed wish of a party or his lawyer, which may be backed by excellent strategic reasons, not to invoke a particular right." *Id.* Because there is a distinction between waiver and forfeiture, a conclusion that a right was not knowingly and intelligently waived at the district court does not inevitably lead to the conclusion that appellate consideration of an error relating to that right was not forfeited. *See id.*

The majority relies on Minn. R.Crim. P. 26.01, subd. 1(2)(a), and the fundamental importance of a *Blakely* right to conclude that a *Blakely* error is exempt from nor-mal forfeiture rules. This conclusion appears to engraft a right to appeal onto the right to jury trial. But it is well established that while a defendant has a constitutionally guaranteed right to a jury trial, the same defendant does not necessarily have a constitutional right to an appeal. U.S. Const. amend. VI; *Martinez v. Court of Appeal of California,* 528 U.S. 152, 159–60, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) ("The Sixth Amendment identifies the basic rights that the accused shall enjoy in 'all criminal prosecutions.' They are presented strictly as rights that are available in preparation for trial and at the trial itself. The Sixth Amendment does not include any right to appeal."); *Ross v. Moffitt,* 417 U.S. 600, 611, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) ("[W]hile no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all." (citing *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894))).

At this point it is important to note that the United States Supreme Court has yet to specifically address the forfeitability of an alleged *Blakely* error. But in a related context, the Court has expressly held that a defendant forfeits appellate consideration of a violation of the right to jury trial on an element of a crime by failing to object at the district court. *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). In *Johnson,* the district court—in accordance with the law at the time—instructed the jury in a perjury case that the element of materiality was a question of law for the court, and the element of materiality was therefore not submitted to the jury. *Id.* at 464, 117 S.Ct. 1544. Johnson was then found guilty and convicted of perjury. *Id.* at 464, 117 S.Ct. 1544. While Johnson's direct appeal was pending, the Court held in *United*

*States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), that the materiality of a false statement must be submitted to the jury rather than decided by the court. *Johnson,* 520 U.S. at 464, 117 S.Ct. 1544; *Gaudin,* 515 U.S. at 511, 115 S.Ct. 2310.

Although the rule in *Gaudin* had not yet been announced at the time of Johnson's trial, the Supreme Court concluded that Johnson had nonetheless forfeited the right to raise on appeal the district court's failure to submit the element of materiality to the jury. *Johnson,* 520 U.S. at 465, 117 S.Ct. 1544. On appeal, Johnson argued that the severity of the district court's error made Fed.R.Crim.P. 52(b), which allows discretionary appellate review of unobjected-to errors for plain error, inapplicable. *Id.* at 466, 117 S.Ct. 1544. The Court rejected Johnson's argument, stating that "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure." *Id.* The Court went on to state that it would be inappropriate to create out of whole cloth an exception to Fed.R.Crim.P. 52(b), and noted that such an exception "would skew [Rule 52(b)'s] careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

Five years later, the Supreme Court reached the same forfeiture conclusion with respect to an *Apprendi* error. *United States v. Cotton,* 535 U.S. 625, 628, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). In *Cotton,* the defendant did not object at the district court regarding an alleged *Apprendi* error that occurred before *Apprendi* was decided. *Id.* at 628, 122 S.Ct. 1781. After sentencing, but while Cotton's direct appeal was still pending, *Apprendi* was decided. *Id.* On appeal to the Supreme Court, that Court applied the plain error doctrine to "[Cotton's] forfeited claim" of an *Apprendi* error and cited *Johnson* for the application of the plain error test. *Id.* at 631, 122 S.Ct. 1781.

Just last year in *United States v. Booker,* the Supreme Court noted in the context of *Apprendi/Blakely* errors that "[w]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." 543 U.S. 220, 268, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). I acknowledge that any guidance provided by *Booker* on the specific issue of forfeitability is limited due to *Booker's* different legal context. In particular, one of the holdings in *Booker* was that the federal sentencing guidelines are advisory, while we held in *State v. Shattuck* that Minnesota's sentencing guidelines are mandatory. *Booker,* 543 U.S. at 245, 125 S.Ct. 738; *Shattuck,* 704 N.W.2d at 141. Nonetheless, the Court's language in *Booker* indicates that *Apprendi/Blakely*-type errors are subject to normal forfeiture rules. Accordingly, based on my analysis of the foregoing cases, I conclude that the majority has failed to provide sufficiently persuasive reasons in support of its conclusion that Minn. R.Crim. P. 26.01, subd. 1(2)(a), somehow requires a result different than that reached by the federal courts.

Our willingness to look to the analytical framework provided by the federal courts is not without precedent. In applying the plain error doctrine, our court has relied heavily on the Supreme Court's decision in *Johnson v. United States,* which is discussed above. *See, e.g., State v. MacLennan,* 702 N.W.2d 219, 235 (Minn.2005); *State v. Smith,* 674 N.W.2d 398, 401 (Minn. 2004); *State v. Burg,* 648 N.W.2d 673, 677

(Minn.2002); *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn.2001); *State v. Pilot*, 595 N.W.2d 511, 518 (Minn.1999); *Griller*, 583 N.W.2d at 740–41. In *Johnson*, the Court applied Fed.R.Crim.P. 52(b). 520 U.S. at 466–67, 117 S.Ct. 1544. Our reliance on the Court's interpretation of Fed.R.Crim.P. 52(b) in the application of Minn. R.Crim. P. 31.02 has a sound and practical basis, because we have previously recognized that Fed.R.Crim.P. 52(b) is "substantially similar" to Minn. R.Crim. P. 31.02.[3] *Hoagland v. State*, 518 N.W.2d 531, 535 n. 3 (Minn.1994). Additionally, the comment to Rule 31 states "Rule 31.02 (Plain Error) is adapted from F.R.Crim. P. 52(b)."

Next, I address the majority's view that we have already concluded that under Minnesota law, *Apprendi/Blakely* errors are not subject to forfeiture for appeal under Minn. R.Crim. P. 31.02. The majority's reliance on *State v. Grossman*, 636 N.W.2d 545 (Minn.2001), and *O'Meara v. State*, 679 N.W.2d 334 (Minn.2004), for the proposition that "the question whether a new rule of law should be applied on appeal turns not on forfeiture law but on retroactivity law" is misplaced. I conclude that the analysis of retroactivity is separate from the analysis of forfeitability. *See Johnson*, 520 U.S. at 467, 117 S.Ct. 1544. Neither *Grossman* nor *O'Meara* analyzes whether consideration of a sentencing error had been forfeited for appeal. *See O'Meara*, 679 N.W.2d at 337–38; *Grossman*, 636 N.W.2d at 547–48. The majority concludes that the *absence* of a forfeiture analysis dictates that Minn. R.Crim. P. 31.02 does not apply to *Apprendi/Blakely* errors. I disagree. Rather, I

conclude that the absence of a forfeiture analysis more likely indicates that the alleged errors were in fact preserved for appeal.

In conclusion, I recognize that the issue that Osborne brings to our court is complex and presents a close question. Indisputably, *Blakely* articulated a significant new rule of law, that it is still in its infancy, and ultimately, I believe that it is the United States Supreme Court that is best suited to guide the continued development of this new rule. To borrow a phrase from Chief Justice Warren Burger, our court is not "the forum in which this tangled web ought to be unsnarled"—at least not at this point in time. *Flood v. Kuhn*, 407 U.S. 258, 286, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972) (Burger, C.J., concurring). Accordingly, until the Supreme Court provides some resolution or at least more guidance on this issue, I conclude that applying the rules articulated in *Johnson*, *Cotton*, and *Booker* represent the better course to follow.

For all the foregoing reasons, I conclude that a defendant forfeits appellate consideration of an alleged *Blakely* error by failing to object to the error at the district court. But our court has the discretion to address the alleged error under the plain error doctrine or, as we did in *Henderson* and *Allen*, in the interests of justice. Therefore, I conclude that Osborne forfeited appellate consideration of any alleged *Blakely* error by failing to object to the district court on Sixth Amendment jury trial grounds. I further conclude that the district court's imposition of an upward sentencing departure based on its own

---

**3.** Fed.R.Crim.P. 52(b) Plain Error. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.

Minn. R.Crim. P. 31.02. Plain Error. Plain errors or defects affecting substantial

rights may be considered by the court upon motions for new trial, post-trial motions, and on appeal although they were not brought to the attention of the trial court.

findings was an error that was plain at the time of this appeal, that Osborne's substantial rights were affected by this error, and that the error affected the fairness and integrity of the judicial proceedings. Accordingly, I concur with the outcome reached by the majority in affirming the court of appeals and remanding for resentencing consistent with *State v. Shattuck.*

One final note. Both the majority and concurrence have addressed the issue before us in the context of the Minnesota Rules of Criminal Procedure and the United States Constitution. Whether the Minnesota Constitution may provide certain additional protections has not been addressed and any discussion of this question will have to await another day.

ANDERSON, G. BARRY, J. (concurring).

I join in the special concurrence of Justice Paul H. Anderson.