**STATE of Minnesota, Respondent,**

v.

**James A. ALLEN, Appellant.**

**No. A04–127.**

Supreme Court of Minnesota.

Nov. 23, 2005.

**42**

John M. Stuart, State Public Defender, Benjamin J. Butler, Assistant State Public Defender, Office of the State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN, Alan L. Mitchell, St. Louis County Attorney, Jeff Vlatkovich, Assistant County Attorney, Duluth, MN, for Respondent.

## OPINION

PAGE, Justice.

In *State v. Shattuck*, 704 N.W.2d 131 (Minn.2005), we held that the imposition of an upward durational departure from the presumptive sentence prescribed by the Minnesota Sentencing Guidelines, based solely on facts found by the judge, violates the Sixth Amendment right to trial by jury under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In this case, we are asked to decide whether an upward dispositional departure executing the presumptive stayed sentence under the guidelines, based on judicially found facts without the aid of a jury, is also unconstitutional under *Blakely*. We are further asked to decide whether the Sixth Amendment jury-trial guarantee prohibits the district court from assigning a custody-status point in determining the defendant's criminal history score under the guidelines. We answer the first question in the affirmative and the second one in the negative. We therefore reverse the decision of the court of appeals and remand to the district court for resentencing.

On July 19, 2003, Cindy Campbell telephoned the Hibbing police to report that James Allen had shown up at a residence where Campbell was visiting, and that she had fled into the bedroom. Campbell had previously reported having problems with Allen. When the responding officer, Captain Gielen, arrived, he saw a grey Ford Bronco in the driveway. Captain Gielen knew that Allen drove such a vehicle and that Allen's driver's license had been cancelled. The residence was that of Allen's mother, who let Captain Gielen in. Allen was sitting in the kitchen. He told the officer he had not done anything, and that he had driven over to take a shower without knowing that Campbell was there. Captain Gielen detected a strong odor of alcohol on Allen's breath and noticed that his eyes were watery and bloodshot and that he was acting agitated.

When Captain Gielen and another officer escorted Allen outside, Allen's brother drove up and asked if he could take Allen with him. Captain Gielen said no. Allen then asked if he could lock up his vehicle, and taking keys from his pocket, locked

the doors of the Bronco. The officers then placed him under arrest.

At the police station, Allen was given the implied-consent advisory and refused to provide a breath test. The reason he gave for refusing was that he had just been sitting at his mother's kitchen table. Allen repeatedly said he had not been driving and that his brother had given him a ride to his mother's house. Allen's brother later informed Captain Gielen that he had last seen Allen several hours before he drove over to his mother's house to pick Allen up.

Allen was charged with first-degree test refusal and first-degree driving while under the influence of alcohol, both felonies. Minn.Stat. §§ 169A.20, subds. 1(1), 2; 169A.24 (2004).[1] He was also charged with the gross misdemeanor offense of driving after cancellation of his license. Minn. Stat. § 171.24, subd. 5 (2004). Allen entered a negotiated plea of guilty to first-degree test refusal in exchange for dismissal of the other charges. The plea agreement left the sentence up to the district court.

The district court determined that Allen had a custody-status point because he was on probation when he committed the current offense. *See* Minn. Sent. Guidelines II.B.2.a. As a result, Allen's presumptive sentence was 42 months, stayed. *See* Minn. Sent. Guidelines IV. Based on Allen's numerous prior alcohol-related convictions and his history of absconding from probation, the court found that Allen was not amenable to probation and sentenced him to an executed 42–month prison term, an upward dispositional departure from the presumptive stayed sentence.

Allen appealed, arguing that the district court abused its discretion in imposing the dispositional departure. While the appeal was pending, the United States Supreme Court issued its decision in *Blakely*. The court of appeals affirmed, concluding that ample evidence supported the district court's finding of unamenability to probation. *State v. Allen*, No. A04–127, 2004 WL 1925881 at *3 (Minn.App. Aug.31, 2004). The court declined to address the implications of *Blakely*, noting that the issue had not been briefed and stating that "*Blakely* does not appear applicable" to a dispositional departure based on unamenability to probation. *Id.* at *1 n. 1.

I.

■ The state argues that Allen forfeited consideration of his *Blakely* claim on appeal by failing to raise an *Apprendi* objection in the district court, and that the claim is not reviewable under the plain-error doctrine. Ordinarily, we will not decide issues that are raised for the first time on appeal, even constitutional questions of criminal procedure. *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989). We have the discretion to consider an unobjected-to error if it is a plain error or defect affecting substantial rights. Minn. R.Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). At our discretion, we may also address such issues when the interests of justice require their consideration and doing so would not work an unfair surprise on a party. *Sorenson*, 441 N.W.2d at 457; *see* Minn. R.Crim. P. 28.02, subd. 11; 29.04, subd. 11.

There are recognized circumstances in which the defendant's failure to raise a sentencing issue at the time sentence is imposed does not waive consideration of

---

1. Both offenses are forms of first-degree driving while impaired, a severity level seven offense under the Sentencing Guidelines.

Minn.Stat. § 169A.24; Minn. Sent. Guidelines IV, V. All references to the Sentencing Guidelines in this opinion are to the 2004 version.

the issue on later review. *See* Minn.Stat. § 590.01, subd. 1 (2004) (providing for postconviction sentencing remedy); Minn. R.Crim. P. 27.03, subd. 9 (allowing district court to correct unlawful sentence at any time); *State v. Fields,* 416 N.W.2d 734, 736 (Minn.1987) (allowing challenge to durational sentencing departure following revocation of stayed sentence); *State v. White,* 300 Minn. 99, 105–06, 219 N.W.2d 89, 93 (1974) (holding that statutory prohibition against double punishment for offenses committed in single behavioral incident cannot be waived).[2] In other circumstances, we have held that by failing to object at sentencing, the defendant forfeited the right to consideration of a sentencing issue on appeal. *State v. Lopez–Solis,* 589 N.W.2d 290, 293 n. 3 (Minn.1999) (reasonableness of prosecution costs); *Blondheim v. State,* 573 N.W.2d 368, 368–69 (Minn.1998) (mandatory minimum fine); *see also State v. Leja,* 684 N.W.2d 442, 447 n. 2 (plurality opinion), 457 n. 3 (Blatz, C.J., dissenting) (2004) (together holding that failure to raise *Apprendi/Blakely* challenge to sentence on appeal waived issue).

In this case, we choose to address Allen's claim in the interests of justice. We do so because of the importance of determining *Blakely*'s applicability to upward dispositional departures and the assignment of a custody-status point, issues that affect numerous cases statewide. We also note that the *Blakely* decision was issued after briefing had been completed in the court of appeals, and Allen immediately notified that court of the decision. For Allen to have objected on *Apprendi* grounds at sentencing would have been of little avail; before *Blakely* was decided, our understanding of *Apprendi* was that the "statutory maximum" penalty author-

ized by the jury's verdict was the maximum sentence allowed by the statute defining the offense. *Shattuck,* 704 N.W.2d at 136–37; *State v. Houston,* 702 N.W.2d 268, 271 (Minn.2005); *see Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

## II.

■ We turn, then, to the question whether the district court could constitutionally impose an upward dispositional departure, that is, execute Allen's presumptive stayed sentence, based on its determination that Allen is unamenable to probation. Allen argues that unamenability to probation is a "fact" for *Apprendi* purposes, and that changing sentence disposition from probation to prison constitutes the kind of increase in punishment contemplated by *Apprendi* and its progeny as unconstitutional unless based on facts found by a jury or admitted by the defendant. The state contends that *Blakely* does not apply to dispositional departures under the Sentencing Guidelines. The state argues that: (1) the constitutional rule is concerned with the length of sentence, and a dispositional departure merely alters its mode of service; and (2) the rule requires the state to prove facts relating to the offense sought to be punished, not facts relating to the offender. The state also relies on *State v. Hanf,* in which the court of appeals held that dispositonal departures based on offender-related characteristics do not violate *Blakely* because they are similar to traditional sentencing judgments made by judges in indeterminate-sentencing schemes, which under *Blakely* do not infringe on the province of the jury. 687 N.W.2d 659, 664 (Minn.App.2004) (citing *Blakely,* 542 U.S.

---

**2.** We recently ruled that *Blakely* does not apply retroactively to cases on collateral review.

*State v. Houston,* 702 N.W.2d 268, 273 (Minn. 2005).

at 309, 124 S.Ct. 2531), *rev. granted* (Minn. Dec. 14, 2004).

We first address the argument that *Blakely* does not apply to dispositional departures. Whether the constitutional rule is limited in application to increases in sentence duration, as the state contends, turns on whether an upward dispositional departure "increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

Minnesota Statutes § 609.135, subdivision 1(a) (2004), authorizes the court, with certain exceptions not relevant here, to stay imposition or execution of a sentence. This provision was enacted as part of the Criminal Code of 1963, long before the creation of the Sentencing Guidelines. Act of May 17, 1963, ch. 753, art. I, § 609.135, 1963 Minn. Laws 1185, 1195.

The presumptive sentences set out in the Sentencing Guidelines Grid are presumptive with respect to both duration "and whether imposition or execution of the felony sentence should be stayed." Minn. Sent. Guidelines II.C. For cases below and to the left of a bold line on the grid, the sentence is presumptively stayed unless the conviction carries a mandatory minimum sentence. Minn. Sent. Guidelines II.C, IV. Section II.D. of the guidelines states that the sentencing judge "shall utilize the presumptive sentence" unless the case involves substantial and compelling circumstances. We held in *Shattuck* that under Minnesota's guidelines scheme, "imposition of the presumptive sentence is mandatory absent additional findings." *Shattuck*, 704 N.W.2d at 141. Thus, under this scheme, a judge's discretion to stay or execute a sentence is far more constrained than under an indeterminate-sentencing scheme. Even under an indeterminate scheme, the judge's discretion in imposing sentence is bound by the range of punishment authorized by the legislature. *Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348. Under Minnesota's determinate sentencing guidelines scheme, the judge must impose a presumptively stayed sentence unless substantial and compelling circumstances are present. Minn. Sent. Guidelines II.D.

In *Blakely*, the Court held that for *Apprendi* purposes the "statutory maximum" is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis omitted). Thus, the constitutional rule that has emerged from the *Apprendi* line of cases is that "[a]ny fact (other than a prior conviction) which is necessary to support *a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict* must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005) (emphasis added). In the present case, the maximum sentence authorized by Allen's plea of guilty was a 42–month prison term, with execution stayed. *Shattuck*, 704 N.W.2d at 140–41; Minn. Sent. Guidelines IV. Based on the structure of the Sentencing Guidelines, sentence disposition—here, a stay—is as much an element of the presumptive sentence as sentence duration.

We cannot agree with the argument that a stayed sentence is merely an alternative mode of serving a prison sentence and therefore is not subject to *Blakely*. A defendant whose felony sentence is stayed is subject to supervision for a period of years, and to incarceration in a local facility for no more than one year. Minn.Stat. § 609.135, subds. 1, 2(a), 4 (2004). By contrast, a defendant whose sentence is executed is incarcerated in a state correc-

tional facility for not less than two-thirds of the sentence duration—in this case, nearly 2–1/2 years—with the remainder on supervised release. Minn.Stat. §§ 244.01, subd. 8; 244.05, subd. 1b(a); 244.101, subd. 1 (2004). The additional loss of liberty that results from execution of a presumptively stayed sentence, it is plain, exceeds the maximum sentence authorized by a plea of guilty or jury verdict, and violates the constitutional rule.

This conclusion finds support in Supreme Court case law as well. In *Ring v. Arizona*, the Court held that the Sixth Amendment jury-trial right encompasses both the fact-finding necessary to durationally increase a sentence and the fact-finding necessary to impose the death penalty. 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). While there is "no doubt that '[d]eath is different,'" *id.* at 605–06, 122 S.Ct. 2428 (citation omitted), imposition of the death penalty rather than life imprisonment and execution of a presumptively stayed sentence have a common thread: both constitute additional punishment that is not authorized by the facts established by the guilty plea or verdict. Moreover, the Supreme Court in *Apprendi* specifically endorsed a statement of the constitutional rule that it is for the jury to make "the assessment of facts that increase *the prescribed range of penalties* to which a criminal defendant is exposed." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (quoting *Jones v. United States*, 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (Stevens, J., concurring)) (emphasis added).

■ Upward dispositional departures under the guidelines may be based on either offender- or offense-related aggravating factors. *State v. Chaklos*, 528 N.W.2d 225, 228 (Minn.1995). Recognizing that the list of aggravating and mitigating factors in Minn. Sent. Guidelines II.D.2 is nonexclusive, we have held that when departing dispositionally, the district court can focus more on the defendant as an individual and whether the presumptive sentence would be best for the defendant and for society. *State v. Heywood*, 338 N.W.2d 243, 244 (Minn.1983); *State v. Wright*, 310 N.W.2d 461, 462 (Minn.1981). Thus, a defendant's particular unamenability to probation may be used to justify an upward dispositional departure. *State v. Park*, 305 N.W.2d 775, 776 (Minn.1981); *see also Chaklos*, 528 N.W.2d at 228.

We do not believe that the use of an offender-related factor to depart from the presumptive sentence, or its similarity to factors considered under Minnesota's former indeterminate-sentencing scheme, insulates the departure from the constitutional rule first enunciated in *Apprendi*. The rule applies to "*[a]ny fact* (other than a prior conviction) which is necessary to support a sentence exceeding the maximum." *Booker*, 125 S.Ct. at 756 (emphasis added); *see Blakely*, 542 U.S. at 301, 124 S.Ct. 2531 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348); *Ring*, 536 U.S. at 589, 122 S.Ct. 2428 (holding that capital defendants "are entitled to jury determination of any fact on which the legislature conditions an increase in maximum punishment"); *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Although each of these cases involved enhanced sentences based on offense-related factors, the Court did not limit the rule to those factors.[3] Addition-

---

**3.** We note that in *Apprendi* and one subsequent case, the Court has enunciated the principle that it is permissible for a judge "to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348 (emphasis in original); *accord Harris v. United States*, 536

ally, with specific reference to the nature of an aggravated sentencing factor, the Court has stressed that "the relevant inquiry is not one of form, but of effect— does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348 (footnote omitted). We conclude, therefore, that the nature of the factor the district court uses to depart from the presumptive sentence is not determinative of whether the constitutional rule applies.

We hold that when the district court found that Allen was unamenable to probation, and on that basis executed his presumptively stayed sentence, it violated Allen's Sixth Amendment right to have a jury make that determination using a reasonable-doubt standard. We further hold that because Minn. Sent. Guidelines II.D authorizes the district court to make such an unconstitutional upward dispositional departure upon finding an aggravating factor without the aid of a jury, that provision is unconstitutional as applied.

We therefore reverse the imposition of the upward dispositional sentencing departure and remand to the district court for resentencing in accordance with this opinion.

### III.

■ Allen also claims that the assignment of a custody-status point in calculating his criminal history score violates *Blakely*. Allen argues that the determination that he was on probation when he committed the current offense does not come within the prior-conviction exception to the constitutional rule.

A defendant's criminal history score is one of the axes on the Sentencing Guidelines Grid that determines the presumptive sentence. Minn. Sent. Guidelines II.B, IV. It is comprised of the defendant's prior convictions, applicable juvenile record, and custody status at the time of the current offense. Minn. Sent. Guidelines II.B. A custody-status point is assigned if the defendant was on probation or another specified form of release when he or she committed the current offense. Minn. Sent. Guidelines II.B.2.[4]

■ The primary reason for excluding a prior conviction from the constitutional rule is that the prior conviction itself has been established by procedures that satisfy constitutional jury-trial and reasonable-doubt guarantees. *See Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348; *Jones*, 526 U.S. at 249, 119 S.Ct. 1215. The relevant fact here—Allen's probation status—flowed directly from the sentence for his prior con-

U.S. 545, 549, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).

4. The guideline reads in pertinent part:
 2. One point is assigned if the offender:
 a. was on probation, parole, supervised release, conditional release, or confined in a jail, workhouse, or prison pending sentencing, following a guilty plea or verdict in a felony, gross misdemeanor or an extended jurisdiction juvenile case, or following a felony, gross misdemeanor or an extended jurisdiction juvenile conviction;
 b. was released pending sentencing at the time the felony was committed for which he or she is being sentenced;

 c. committed the current offense within the period of the initial length of stay pronounced by the sentencing judge for a prior felony, gross misdemeanor or an extended jurisdiction juvenile conviction. This policy does not apply if the probationary sentence for the prior offense is revoked, and the offender serves an executed sentence; or
 d. became subject to one of the criminal justice supervision statuses listed in 2.a above at any point in time during which the offense occurred when multiple offenses are an element of the conviction offense or the conviction offense is an aggravated offense. Minn. Sent. Guidelines II.B.2.

viction. We believe that the fact a defendant is on probation at the time of the current offense arises from, and is so essentially analogous to, the fact of a prior conviction, that constitutional considerations do not require it to be determined by a jury. *See People v. George,* 18 Cal. Rptr.3d 651, 656 (Cal.App. 4th Dist.2004), *remanded on other grounds,* 34 Cal. Rptr.3d 193, 119 P.3d 959 (Cal.2005); *State v. Brooks,* 690 N.W.2d 160, 163 (Minn.App. 2004), *rev. granted* (Minn. Mar. 15, 2005).

In *Shattuck,* we held that for felonies other than first-degree murder, the presumptive sentence prescribed by the Sentencing Guidelines is the maximum a judge may impose based solely on facts reflected in the jury verdict or admitted by the defendant. *Shattuck,* 704 N.W.2d at 141 (citing *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531). A defendant's criminal history score, including custody-status points, is essential to determining what the "statutory maximum" penalty is for *Apprendi–Blakely* purposes. Like the fact or character of a prior conviction, a defendant's custody status can be determined by reviewing court records relating to that conviction. *See Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 1257, 161 L.Ed.2d 205 (2005) (holding that in determining character of prior conviction, court is generally limited to examining certain court documents and statutory offense definition); *State v. Leake,* 699 N.W.2d 312, 325 (Minn.2005) (same). We also note that in the district court, Allen did not challenge the fact he was on probation when he committed the current offense.[5]

For these reasons, we hold that the district court's assigning Allen a custody-status point to calculate his criminal history score did not violate the Sixth Amendment.

## IV.

Finally, Allen requests that we vacate the district court's order requiring him to make a $200 copayment for public defender services. The order was issued pursuant to Minn.Stat. § 611.17, subd. 1(c) (2004), which we subsequently declared unconstitutional in *State v. Tennin,* 674 N.W.2d 403, 410 (Minn.2004).

■ Allen did not raise this issue in the court of appeals or present it in his petition for review, which would ordinarily bar him from raising it now. We nevertheless address the issue in the interests of justice and vacate the order.

Reversed and remanded.

ANDERSON, G. BARRY, Justice (concurring in part and dissenting in part).

I concur with the majority that the imposition of an upward dispositional departure under the Minnesota Sentencing Guidelines, based upon a finding of unamenability to probation, violated appellant's Sixth Amendment right to a jury trial. I also concur with the majority that the district court did not violate the Sixth Amendment by assigning appellant a custody-status point in determining appellant's presumptive sentence.

I part company from the majority as to the remedy, for the reasons expressed in the dissent in *State v. Shattuck,* 704 N.W.2d 131, 148 (Minn.2005) (Anderson, G.

---

**5.** At sentencing, Allen's counsel stated that the custody-status point was assigned because Allen was "still technically on probation," but argued that this was not significant because, if Allen's earlier sentence had been executed as he requested, the point would not have been assigned. We note that Minn.Stat. § 609.135, subd. 7 (2004), prohibits an offender from demanding execution of a stayed sentence if he or she "will serve less than nine months at the state institution," which apparently was the case here.

Barry, J., concurring in part and dissenting in part).

Having concluded the guidelines are nonseverable, the entire sentencing guidelines regime is unconstitutional and I would instead remand for sentencing under the statutory range for the offense committed.[1]

---

**1.** Under the statute, Allen could receive a sentence of imprisonment for not more than seven years, a fine not exceeding $14,000, or both. Minn.Stat. §§ 169A.20, subd. 2; 169A.24 (2004).