71 So.3d 173 (2011)
Elijah JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 1D10-1568.
District Court of Appeal of Florida, First District.
September 23, 2011.
Nancy A. Daniels, Public Defender, and Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellant.
Pamela Jo Bondi, Attorney General, and Bryan Jordan, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Appellant was sentenced to three years in prison for driving while his license was cancelled, suspended, or revoked. He does not challenge his conviction on appeal; *174 he only challenges his sentence. He contends that the trial court erred in imposing a prison sentence because the record does not support the court's finding pursuant to section 775.082(10), Florida Statutes (2009), that a nonstate prison sanction would present a danger to the public. Alternatively, Appellant contends that his prison sentence violates Apprendi[1] and Blakely[2] because it exceeds the nonstate prison sanction required by section 775.082(10) and is based on a finding made by the court rather than the jury. We reverse on the first issue and, thus, do not reach the Apprendi/Blakely issue.[3]
On July 24, 2009, Appellant was observed by a law enforcement officer driving his brother's pick-up truck. Appellant was the only occupant in the truck, and after the officer observed Appellant illegally park the truck, he made contact with Appellant and asked for his driver's license. Appellant replied that he did not have a valid license, and after the officer checked Appellant's information against the records of the Department of Highway Safety and Motor Vehicles, he arrested Appellant as a habitual traffic offender.
Appellant proceeded to trial and the jury returned a guilty verdict. The trial court noted that Appellant's conviction was a third-degree felony, subjecting him to up to five years in prison even though he only had 8.2 points on his sentencing scoresheet. Appellant argued that, pursuant to section 775.082(10), the court could not impose a prison sentence absent a finding that a nonstate prison sanction could present a danger to the public. The trial court thereafter sentenced Appellant to three years in prison based on the following written findings:
1. Defendant has evinced an unwillingness to discontinue driving without a driver's license, despite repeated punishment by the Courts;
2. Driving without a license endangers the public due to the probability of Defendant's attempting to elude law enforcement due to his suspended license, which could lead to a high speed automobile chase;
3. Another danger to the public is that Defendant's insistence on driving without a license also requires that he drive without automobile insurance, as an unlicensed driver, such as Defendant, cannot have insurance to assist a victim should he be involved in an accident; and
4. Defendant's unavailability to drive due to incarceration in State prison is the only method open to the Court for the protection of the public from Defendant's irresponsible and dangerous behavior.
Appellant contends that these findings are not supported by the record and, therefore, the trial court erred in imposing a prison sentence under section 775.082(10). We agree.
Section 775.082(10) provides:
If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s. 776.08, and excluding any third degree felony *175 violation under chapter 810, and if the total sentence points pursuant to s. 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility pursuant to this section.
The clear purpose and obvious intent section 775.082(10) was to keep certain offenders out of the state prison system.[4] The statute operates similarly to the pre-Criminal Punishment Code sentencing guidelines[5] by establishing a presumptive sentence from which the trial court may deviate up to the statutory maximum in limited circumstances and only if the court explains its reasons in writing. The first sentence of the statute provides that the presumptive mandatory sentence for qualifying offenders is a "nonstate prison sanction." § 775.082(10), Fla. Stat. The statute does define "nonstate prison sanction," but the phrase is commonly understood to mean probation, community control, or imprisonment in the county jail for up to one year.[6] The second sentence of the statute allows the trial court to deviate from the presumptive sentence and impose a prison sentence, but only if the court specifically finds that sentencing the offender to a nonstate prison sanction could present a danger to the public. Id. The trial court's findings must be in writing. Id.; see also Hutto v. State, 50 So.3d 85 (Fla. 1st DCA 2010).
There is very little case law interpreting section 775.082(10). The only case reviewing the sufficiency of the findings made by the trial court to justify a prison sentence, rather than a nonstate prison sanction, is McCloud v. State, 55 So.3d 643 (Fla. 5th DCA 2011). In that case, the defendant *176 pled guilty to two counts of petit theft and was sentenced to two years in prison followed by two years of community control. Id. at 644. At the trial court, the defendant argued that he did not pose a danger to the public because he had no history of violence. Id. The trial court found, however, that the defendant was a danger to the public because his "larcenous behavior was so well-known and frequent that when he was seen in a neighborhood, additional police resources were deployed to his location." Id. The Fifth District upheld the defendant's prison sentence on the basis that the defendant was a "habitual thief and presents a threat to property." Id. at 645. The court specifically held that "`danger may, at least in some cases, encompass pecuniary or economic harm.'" Id. at 644 (quoting U.S. v. Reynolds, 956 F.2d 192, 192-93 (9th Cir.1992)); see also id. at 645 (concluding that there is "nothing in the language of section 775.082(10) that suggests that the Legislature intended to limit the meaning of `danger to the public' only to persons threatening physical violence or injury").
We agree with the reasoning of Fifth District in McCloud that a danger to the public does not require a history of violence and can be based on economic or other types of harm. However, the record in this case does not support the trial court's finding regarding Appellant's potential future dangerousness. Although Appellant's history of driving without a license arguably supports the trial court's finding that he will continue to do so, the court did not make sufficient findings and the record does not suggest that imprisonment within the state prison system rather than the county jail would better deter him from continued unlicensed driving. Nor is there any record support for the court's implicit finding that one year of incarceration in the county jail would constitute a significantly lesser deterrent for Appellant than three years in state prison. The trial court's additional findings are speculative at best because it does not appear from the record that Appellant has a history of vehicle accidents or engaging in high speed chases with law enforcement. Accordingly, because the trial court's findings are unsupported by the record, the court erred in imposing a prison sentence rather than a nonstate prison sanction in accordance with section 775.082(10).
In sum, for the reasons stated above, we reverse Appellant's sentence and remand for resentencing. On remand, the trial court shall sentence Appellant to a nonstate prison sanction as required by section 775.082(10). See Shull v. Dugger, 515 So.2d 748, 750 (Fla.1987) (holding in a case involving an upward departure under the sentencing guidelines that "a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court"); but cf. Jackson v. State, 64 So.3d 90 (Fla.2011) (holding that a trial court may again impose a downward departure sentence under the Criminal Punishment Code on remand where the appellate court reverses the grounds for the initial departure).
REVERSED and REMANDED with directions.
WETHERELL and SWANSON, JJ., concur.
THOMAS, J., concurring in result only with opinion.
THOMAS, J., concurring in result only.
I concur in result only because, as both parties agree and the trial court initially ruled, the sentence here violates Appellant's Sixth Amendment right to a jury trial. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 *177 (2004). While fealty to judicial restraint requires courts to avoid constitutional issues if possible, it is not possible here for one simple reason: As the State argues, Appellant did not preserve the non-constitutional ground for reversal, as he did not raise the argument below at the resentencing hearing. See Steinhorst v. State, 412 So.2d 332 (Fla.1982). Section 924.051(1)(b), Florida Statutes, defines the preservation requirement as follows: "`Preserved' means . . . that the issue, legal argument, or objection to evidence was sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefore." (Emphasis added.) Subsection (3) of this statute clearly prohibits this court from considering an unpreserved error, unless it constitutes fundamental error. The issue relied upon by the majority is obviously not fundamental error, as the majority simply disagrees with the trial court's evaluation of the evidence of Appellant's behavior and its likely consequences.
Because the trial court ordered resentencing based on Appellant's rule 3.800(b) motion, a de novo proceeding was conducted. Lebron v. State, 982 So.2d 649, 659 (Fla.2008) (resentencing is a "clean slate" and the State is required to establish facts even if previously established in prior sentencing hearing). Thus, the State properly concedes that the constitutional claim was preserved, although it would not have been preserved had the trial court initially denied relief, as the claim could not be properly raised by a motion filed under rule 3.800. See Jackson v. State, 983 So.2d 562 (Fla.2008).
It is for this very same reason, i.e., that a resentencing hearing is reviewed de novo, that the non-constitutional ground was not preservedunder section 924.051, Florida Statutes, and the contemporaneous objection rule, Appellant had a duty to repeat all sentencing arguments at the resentencing hearing in order to preserve those issues.
At the resentencing hearing, the parties focused almost exclusively on the Sixth Amendment issue, and the defense made only a vague allusion to any complaint regarding the statutory findings related to public safety. In addition, the trial court made it clear the original sentence had been vacated, and then it imposed the same prison sentence. If Appellant wished to preserve his statutory arguments, he was required to repeat his objections, with specificity, at the de novo resentencing hearing. See Brooks v. State, 54 So.3d 1069, 1071 (Fla. 4th DCA 2011) (holding that Appellant failed to preserve alleged error at resentencing); cf. Cromartie v. State, 70 So.3d 559 (Fla.2011) ("[W]here there is no contemporaneous objection during sentencing hearing and where the error does not qualify as a `sentencing error' that can be raised in a rule 3.800(b) motion, the error can still be considered . . . if the error is fundamental.") (quoting Jackson v. State, 983 So.2d 562, 574). The Florida Supreme Court has made it clear that the preservation rule even applies in death penalty cases. Baptiste v. State, 995 So.2d 285, 302 (Fla.2008). Furthermore, both parties correctly agree that Appellant is entitled to relief under Blakely, and Appellant did not respond to the State's correct assertion that he failed to preserve his non-constitutional claim.
Thus, the only ground for reversal is the violation of Appellant's Sixth Amendment right to have a jury make the necessary findings to justify a sentence in excess of the "statutory maximum." But because the majority erroneously addresses an unpreserved argument, which is flawed even on the merits, I will address both issues.

*178 I. Statutory Findings

As to the issue of public safety, the trial court found that 1) Appellant has refused to obey Florida's laws regarding driver's licenses; 2) Appellant cannot obtain automobile insurance, because he does not possess a driver's license, and thus, he poses a risk that any victim of his driving will likely have no viable financial recourse against him; 3) Appellant will not voluntarily stop for law enforcement in the future, knowing that he will be subject to prosecution for driving without a license; and thus, 4) a sentence limited to one year of incarceration in a local facility is not sufficient to protect the public. These findings, which are based on facts or reasonably foreseeable consequences, all support the trial court's ultimate conclusion that a nonstate prison sanction is not sufficient to protect the public. This explains why the State correctly conceded at oral argument that "on these facts," the prison sentence under section 775.082(10), Florida Statutes, violates the holding of Blakely not because the judge's findings are flawed, but because only a jury of Appellant's peers can make such a finding.

II. Blakely v. Washington Controls
The only error committed by the trial court was its decision reversing itself and denying relief based on Blakely. The trial court's order on Appellant's second motion filed under Florida Rule of Criminal Procedure 3.800(b)(2) states that "the statutory scheme utilized to sentence the Defendant appears to be unconstitutional in that it allows a judicial finding that a nonstate prison sanction could present a danger to the public to increase the maximum permissible sentence under the statute." Yet at its ordered resentencing, the trial court reversed its position and imposed the sentence at issue here.
As initially recognized by the trial court, under Blakely, the "statutory maximum" term is any nonstate prison sanction. Appellant was sentenced to state prison, thus, by definition, his sentence exceeds the statutory maximum term. This is necessarily true, because nothing inherent in the jury verdict establishes the "fact" that a nonstate prison sanction is insufficient to protect the public. While the trial court could logically reach such a conclusion, under Blakely, only a jury can make that decision beyond and to the exclusion of a reasonable doubt.
Thus, without a jury finding, a trial court cannot impose a "dispositional departure," i.e., incarceration rather than probation, because that would exceed the statutory maximum by increasing the quantum of punishment even though the length of the sentence might be no different. In other words, five years of probation is most certainly not equal to five years of state prison: the latter is qualitatively, albeit not quantitatively, more severe. Accordingly, a "dispositional departure" is just as invalid for Sixth Amendment analysis as a "durational departure."
At least one other state supreme court has agreed based on a similar sentencing law. State v. Allen, 706 N.W.2d 40 (Minn. 2005), cert. denied, 547 U.S. 1106, 126 S.Ct. 1884, 164 L.Ed.2d 583 (2006). In Allen, the Minnesota Supreme Court properly recognized that a statute which created a presumptively probationary sentence had established that sentence as a "statutory maximum" term for Sixth Amendment purposes under Blakely; accordingly, a prison sentence under this statutory scheme violated Blakely, because the punishment was greater than probation, even though the length of the sentence might be the same: "The additional loss of liberty that results from [a prison sentence as compared to probation], it is plain, exceeds the maximum sentence authorized by a plea of guilty or jury verdict, and *179 violates the constitutional rule." 706 N.W.2d at 46 (emphasis added).
The United States Supreme Court has declared that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict, or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis in original). This principle is drawn from the Supreme Court's previous ruling in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely, the Supreme Court simply clarified Apprendi by further defining "statutory maximum" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis in original).
Only a jury can make findings to authorize a sentence beyond the statutory maximum. Thus, the trial court could not impose a sentence greater than one year in the county jail, two years of community control, or up to five years of probation, or any combination thereof, unless a jury determined that the greater sentence was necessary to protect the public.
Accordingly, the majority should not interpret section 775.082(10) based on sentencing guidelines principles now rendered obsolete by Blakely. We do not advance sound jurisprudence in this state by rejecting the arguments of both parties and ignoring binding United States Supreme Court case law. We should hold that a trial court lacks the lawful authority under this statute to make any findings without a special jury verdict or a waiver of the defendant's Sixth Amendment right. Thus, I concur in result only that Appellant's sentence must be reversed.
NOTES
[1] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[2] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] We are satisfied that the first issue is preserved for appellate review in light of the argument presented below and the unique and tortured procedural history of the sentencing process in this case, which culminated in a perfunctory resentencing "hearing" at which the trial court simply imposed the same sentence it had initially imposed.
[4] Section 775.082(10) was enacted in 2009 as a part of a cost-savings measure for the Department of Corrections, and the legislative staff analysis characterized the statute as a "prison diversion approach" pursuant to which the trial court was required to "sentence certain non-violent low-scoring offenders to a non-state prison sanction unless the court finds that such a sentence could endanger the public." See Fla. Comm. on Ways & Means, Bill Analysis & Fiscal Impact Statement for CS/SB 1722, at 1 (Apr. 6, 2009) (on file with comm.). The staff analysis explained the rationale for the statute as follows:

Under current law a judge can sentence any third degree felon for up to five years in prison regardless of the total sentence score. In the last few years thousands of offenders whose sentence points are under the 44 point threshold recommended for a prison sanction have been sentenced to state prison. The absence of adequate diversionary programs and the overcrowding of jails have reportedly encouraged this trend of sending more low-level offenders to state prison.
According to [DOC], research has shown that diversionary programs which offer substance abuse treatment, vocational programming, employment and job training and intense supervision have reduced offender recidivism and reduced prison populations by implementing these programs. The goal of these programs is to improve public safety by reducing crime through providing non-violent offenders with the tools to function successfully in the community.
Id. at 3.
[5] See generally § 921.0016, Fla. Stat. (1995); Fla. R. Crim. P. 3.701, 3.988.
[6] This common understanding is consistent with the usage of the phrase in section 921.00241, which, like section 775.082(10), was enacted through chapter 2009-63, Laws of Florida. See § 921.00241(3), Fla. Stat. (using the phrase "nonstate prison sanction" to refer to a sentence imposed under subsection (2) of that statute, i.e., "a term of probation, community control, or community supervision with mandatory participation in a prison diversion program of the Department of Corrections if such program is funded and exists in the judicial circuit in which the offender is sentenced").