*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2038**

State of Minnesota,
Respondent,

vs.

William Alan Fellner,
Appellant.

**Filed December 1, 2014
Affirmed in part, reversed in part, and remanded
Rodenberg, Judge**

Rice County District Court
File No. 66-CR-08-3296

Lori Swanson, Attorney General, St. Paul, Minnesota; and

G. Paul Beaumaster, Rice County Attorney, Terence J. Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota;

Theodore D. Sampsell-Jones, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and

Smith, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant challenges his conviction of depriving another of parental rights, arguing that his actions were not sufficient to constitute "concealment." He also challenges the district court's upward dispositional sentencing departure. We affirm the conviction, but we reverse the sentence and remand for resentencing.

**FACTS**

Appellant William Alan Fellner and L.L. married in 2001. Between 2001 and 2004, appellant and L.L. had three children together. In 2008 they separated physically, although not legally. Appellant moved to Texas to live with his mother, while L.L. stayed in Minnesota with their three children.

On June 18, 2008, appellant returned to Minnesota. L.L. and appellant had not spoken for months and L.L. did not expect him to be in Minnesota. Nor had she discussed with appellant his coming to get the children. But when L.L. arrived home that day, appellant was standing in her driveway. He said that he was there to get the children. L.L. "said no," but appellant picked up two of their three children from the yard where they were playing and placed them in his brother's car. The other child was in the house and appellant did not take that child with him.

When L.L. was unable to stop appellant and his brother from leaving with the children, she called the police. The police informed her that, because she and appellant were the children's parents and still married, they could do nothing because "[h]e has 50-50 rights" in the absence of any court order directly otherwise. L.L. knew that appellant

had taken the children to his brother's home. L.L. went there but appellant and his brother's family denied her both entry into the home and access to the children, although the children waved at her through the window.

Between the night of June 18, 2008, when L.L. was refused entry to appellant's brother's home, and June 22, 2008, L.L. had no contact with appellant or the children. During that time, L.L. tried calling appellant several times. But appellant rejected her calls and eventually blocked her from calling him. When asked whether she "knew it was likely that [appellant would] be in La Porte, Texas" after he "left with the children," L.L. testified that "[p]robably, yes," she knew it was likely. On June 22, 2008, L.L. received a phone call from her children. During that phone call, L.L. learned that the children were in La Porte, Texas with appellant and his mother at his mother's home.

Appellant was charged with depriving another of parental rights in violation of a court order under Minn. Stat. § 609.26, subd. 1(3) (2006). A jury trial was scheduled to begin in May 2012, but the state was granted leave to amend its complaint to allege deprivation of parental rights by concealment under Minn. Stat. § 609.26, subd. 1(1) (2006), rather than in violation of a court order. Following the jury trial, appellant was found guilty of deprivation of parental rights by concealment.

At sentencing, the presumptive guidelines disposition was a stayed, probationary sentence. However, the district court made a finding that appellant was not amenable to probation and sentenced appellant to one year and one day in prison and executed the sentence. This appeal followed.

3

**D E C I S I O N**

**I.**

Appellant first argues that the evidence is insufficient to support his conviction under Minn. Stat. § 609.26, subd. 1(1), because he did not "conceal" the children from L.L. Concerning a challenge to the sufficiency of the evidence, we review the record thoroughly "to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" for the jury to reasonably conclude beyond a reasonable doubt that the defendant was guilty. *State v. Fitman*, 811 N.W.2d 120, 122 (Minn. App. 2012). We assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *Id.* (quotation omitted). Whether the defendant's actions met the statutory definition of depriving another of parental rights is a question of statutory interpretation, which we review de novo. *State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013).

Minn. Stat. § 609.26, subd. 1(1) provides: "Whoever intentionally does any of the following acts may be charged with a felony . . . conceals a minor child from the child's parent where the action manifests an intent substantially to deprive that parent of parental rights."

In *Fitman*, we held that "concealing a minor child is a necessary element of the crime charged" and that "[c]oncealing children requires actively hiding them or attempting to keep another from discovering their whereabouts." 811 N.W.2d at 122-23 (extrapolating this definition from the dictionary definition of conceal, which is "[t]o hide or keep from observation, discovery, or understanding; keep secret" (citing *The American*

*Heritage Dictionary* 304 (2d ed. 1985) (quotation omitted))). "[W]hen the parent knows the exact location of the child, an element of the crime has not been met." *Id.* at 124 n.3.

Appellant argues that, as in *Fitman*, the evidence here is insufficient to find concealment simply because L.L. did not "physically see" the children. However, in *Fitman*, "there was no evidence that [the defendant] intentionally prevented [the father] from observing them or discovering their whereabouts." *Id.* at 123. Here, there is evidence in the record that appellant "intentionally prevented" L.L. from discovering the whereabouts of the children. Appellant rejected L.L.'s calls, eventually blocking her from calling him at all, and appellant did not call L.L. or indicate where he was taking the children. For at least the time from June 19 until June 22, L.L., despite believing that appellant would take the children to Texas, did not know where they were. Appellant's actions kept L.L. from ascertaining the whereabouts of the children. And during that time, she was deprived of her parental rights to them.

Appellant argues that L.L.'s testimony indicates that she knew it was "probably" likely that the children would go to Texas. Appellant contends that, because L.L. thought that appellant would "probably" take the children to Texas, there is insufficient evidence to show that appellant concealed the children from her.

But appellant improperly focuses on what L.L. *thought* rather than on what appellant *did*. While L.L. had a general idea of where appellant was "probably" going to take the children, appellant's actions after he departed from his brother's home with the children prevented L.L. from knowing the children's whereabouts. Appellant did not inform L.L. of where he was taking the children. He refused to let L.L. enter his

5

brother's home to see the children, departed without telling her where he was taking the children, and refused L.L.'s numerous calls—eventually blocking her from calling him. He did not contact L.L. for three days, during which time the children were plainly concealed from L.L. This evidence is sufficient for the jury to have found that appellant "kept [L.L.] from discovering the children's whereabouts" during at least those three days. Therefore, the evidence is sufficient to support appellant's conviction.

## II.

Appellant also challenges the district court's upward dispositional sentencing departure. "[U]se of . . . offender-related factor[s] to depart from the presumptive sentence . . . [do not] insulate[] the departure from the constitutional rule" requiring a jury trial on issues bearing on a departure from the sentencing guidelines. *State v. Allen*, 706 N.W.2d. 40, 46 (Minn. 2005). Unless a defendant otherwise stipulates, the "district court must submit to a jury the question of whether the State has proven beyond a reasonable doubt the existence of additional facts, which were neither admitted by the defendant, nor necessary to prove the elements of the offense, but which support reasons for departure." *State v. Rourke*, 773 N.W.2d 913, 921 (Minn. 2009). A finding that a defendant is unamenable to probation without holding a *Blakely* trial and in the absence of a waiver of *Blakely* rights is a violation of a defendant's Sixth Amendment rights. *Allen*, 706 N.W.2d at 47.

Here, there was no objection by appellant before the district court to the upward dispositional departure. However, we may still review for plain error or when the interests of justice require our consideration of an issue. *Id.* at 43.

6

In sentencing appellant, the district court found that appellant was unamenable to probation. The record reveals that appellant failed to appear when the matter was first scheduled for trial and, in fact, did not appear until after he was taken into custody in March 2012. Further, appellant did not cooperate with the presentence investigation and did not appear for sentencing as ordered. The district court continued sentencing for one month and appellant still did not appear. A warrant was issued and he was again arrested in Texas. The Rice County Sheriff's Department traveled to Houston to retrieve him. The district court had good reason to observe that it did not "believe that [appellant would] cooperate with probation in any way" and did not believe appellant was "amenable to probation."

But *Allen*, which was decided in 2005, clearly requires that a defendant's unamenablility to probation must be proven to a jury, unless the defendant has waived his *Blakely* rights. 706 N.W.2d at 47. Appellant did not waive this right. Therefore, the district court's upward dispositional departure violated appellant's Sixth Amendment rights under *Blakely* and *Allen*, and was plainly erroneous. *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014). And in depriving appellant of a constitutional right to a trial by jury, the error did affect appellant's substantial rights and affected the integrity of the proceedings. We therefore reverse the sentence and remand for resentencing.

**Affirmed in part, reversed in part, and remanded.**